**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 28, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 03-11094

GARY LYNN STERLING,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

(3:01-CV-0228)

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner Gary Lynn Sterling was convicted of capital murder in Texas and sentenced to death. Sterling filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 2254. The district court denied Sterling's petition. The district court also

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denied Sterling's application for a certificate of appealability ("COA"). Sterling now requests a COA from this Court pursuant to 28 U.S.C. § 2253(c)(2). For the following reasons, we GRANT Sterling's application for COA on the ineffective assistance of counsel ("IAC") issue regarding the admittance of a potentially racially biased juror, but we DENY a COA as to the other issues presented.

## BACKGROUND

In February 1989 Sterling was convicted and sentenced to death for the capital offense of murdering John W. Carthey in the course of committing or attempting to commit robbery. On direct appeal in 1992, the Texas Court of Criminal Appeals affirmed Sterling's conviction and sentence; the Supreme Court of the United States denied certiorari. In 1994 the district court dismissed Sterling's initial habeas corpus petition for failure to exhaust state court remedies. This Court affirmed the dismissal of Sterling's unexhausted petition, but the Supreme Court granted certiorari, vacated the judgment, and remanded for further proceedings. On remand in 1995, this Court again affirmed the district court's dismissal of Sterling's unexhausted petition.

In December 1996 Sterling filed his state habeas application. After conducting an evidentiary hearing, the trial court entered findings of fact and conclusions of law recommending the denial of relief. In 2001 the Court of Criminal Appeals adopted the trial

judge's findings and conclusions and denied habeas relief. Later that same year, Sterling filed a subsequent application for state habeas relief, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ. In 2002 the Supreme Court denied certiorari. Sterling then filed his petition for a writ of habeas corpus in district court, which the court denied after oral argument in 2003. The district court also denied Sterling's motion to reconsider the judgment. Sterling then noticed his appeal, and the district court denied his application for COA.

## DISCUSSION

Sterling filed his Section 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, his petition is subject to the procedures imposed by AEDPA; Sterling's right to appeal is governed by the COA requirements of § 2253(c). *See **Slack v. McDaniel***, 529 U.S. 473, 478 (2000).

Under AEDPA, a petitioner must obtain a COA before an appeal can be taken to this Court. 28 U.S.C.A. § 2253(c) (West 2004); *see also **Miller-El v. Cockrell***, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). When a habeas petitioner requests permission to seek appellate review of the dismissal of his petition, this Court limits its examination to a "threshold inquiry into the underlying merit of his claims."

3

*Miller-El*, 537 U.S. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336.

A COA will be granted if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2) (West 2004). Meeting this standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotes and citation omitted). At issue is the debatability of the underlying constitutional claim, but not the resolution of that debate. *Id.* at 342. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

When the district court denies a petitioner's petition on procedural grounds without reaching the underlying constitutional claim, a COA should issue if the petitioner demonstrates both that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling *and* that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. *Slack*, 529 U.S. at

478.  Here, because this case involves the death penalty, "any doubts as to whether a COA should issue must be resolved in [Sterling's] favor." **Hernandez v. Johnson**, 213 F.3d 243, 248 (5th Cir. 2000).

## Whether a COA should issue on Sterling's IAC claim as to the admittance of juror Victor Walther.

In order to establish a Sixth Amendment IAC violation, a petitioner must prove both (1) that counsel rendered deficient performance and (2) that counsel's actions resulted in actual prejudice.  **Strickland v. Washington**, 466 U.S. 668, 687-88, 690 (1984); **Moore v. Johnson**, 194 F.3d 586, 591 (5th Cir. 1999).  It is well settled that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." **Strickland**, 466 U.S. at 689 (internal quotes and citation omitted).  However, it is also well settled that the Sixth Amendment ensures that "the accused shall enjoy the right to a speedy and public trial, by an *impartial jury*." **Id.** at 685 (emphasis added).  Thus, the Sixth Amendment "envisions [defense] counsel's playing a role that is critical to the ability of the adversarial system to produce just results." **Id.**; *see also* **Wiggins v. Smith**, 123 S. Ct. 2527, 2535 (2003) (reconfirming two-prong **Strickland** analysis in the context of

whether defense counsel conducted a reasonable investigation into mitigating evidence).

Sterling is African-American; Victor Walther, who sat on Sterling's capital murder jury, is Caucasian; Sterling's victim Carthey was Caucasian. Sterling maintains that Walther is racist as to African-Americans and that his prejudiced views link race with criminal behavior. Sterling bases this contention on a post-trial affidavit where Walther referenced the criminal behavior of "some nig**rs who live a couple of blocks over." At the state habeas hearing, Walther testified that he likely used that term at the time of Sterling's trial. Sterling argues that one of his defense counsel, Robert Dunn, was familiar with Walther's attitude toward African-Americans because he had known Walther since his youth. Thus, Sterling asserts Dunn was ineffective in that he did not question or press Walther during *voir dire* about his racial bias, which bias subsequently tainted Sterling's trial.

The state asserts that both sides asked numerous questions about Walther's ability to be fair and impartial during *voir dire*, especially in light of Walther's prior representation by Dunn on several occasions; Walther indicated he could be fair to both sides. Dunn testified at the state habeas hearing that despite any potential prejudiced views, he considered Walther a "fair man" and "probably a middle-of-the-road juror for Navarro County." Both Dunn and his co-counsel on Sterling's defense, Kerri Anderson

6

Donica, testified that the decision that Walther would be a favorable juror was a conscious and strategic trial tactic. Donica felt Dunn was very pleased to have Walther on the jury because of their prior attorney-client relationship. While Dunn did not question any potential jurors about racial bias, he stated this decision rested on his belief that he very seldom receives truthful answers. Moreover, Walther testified at the state habeas hearing that "the color [of a defendant] doesn't make no difference" and that he felt the same way at the time of Sterling's trial and would had said so if asked. Walther also stated he has some very close friends who are African-American, the term "nig**r" is a "just a figure of speech," and using that term did not make him a racist.

The district court determined that considering the strategic nature of Dunn's conduct, Dunn's personal knowledge about and assessment of Walther, and Walther's answers during *voir dire*, the state habeas court was not unreasonable in its conclusion that Dunn's performance at *voir dire* did not amount to the deficient performance required to show IAC. *See id.* at 687 (explaining that failure to demonstrate either prong in the IAC analysis makes it unnecessary to examine the other). The district court did not undergo any prejudice analysis under ***Strickland***.

Here, Sterling's defense counsel had firsthand knowledge about the potentially racially biased views of a possible juror to Sterling's murder trial. Strategy or not, the fact that Dunn did

7

not seem to delve at all into what effect the possibly racist views he personally knew Walther to hold (toward *African-Americans*) would have on the impartiality and outcome of Sterling's trial creates the following debatable questions, among reasonable jurists: (1) did Sterling's counsel's treatment of Walther as a potential juror and acceptance of him as a juror amount to deficient performance; and (2) as a result of Walther serving on the jury, was the proper functioning of the adversarial process undermined to the extent that Sterling's trial cannot be relied upon as a just result under the Sixth Amendment. Thus, based upon the limited threshold inquiry this Court performs under the mandate of **Miller-El**, we find reasonable jurists would be able to debate whether this issue should have been resolved in a different manner.

**Whether a COA should issue on Sterling's due process claim regarding Deputy James Jones' mistaken testimony about the time of the murder.**

Any prisoner who attempts to bring his constitutional claim to federal court after procedurally defaulting in state court "must demonstrate cause and actual prejudice before obtaining relief." **Engle v. Isaac**, 456 U.S. 107, 129 (1982); *see also* **Wainwright v. Sykes**, 433 U.S. 72, 87-89 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." **Murray v. Carrier**, 477 U.S. 478, 488 (1986). "Where a plain

8

procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

During Sterling's trial, Deputy James Jones opined that the murder had taken place between 11:00 p.m. on Friday, May 13, 1988, and 1:00 a.m. on Saturday, May 14, 1988. Years later, Deputy Jones realized his mistake and changed his opinion to reflect that the murder took place earlier on that Friday evening. Deputy Jones gave an affidavit stating such, which was filed in the state's response to Sterling's state habeas petition, and testified at the evidentiary hearing that he was mistaken about the time frame and would have corrected himself earlier if the issue had been raised at trial or otherwise. Sterling argues that this mistaken and then changed testimony is tantamount to the prosecution suppressing material evidence, which he contends violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

However, Sterling did not complain of this alleged prosecutorial misconduct until he moved to amend his state habeas petition on September 28, 1998, more than fourteen months after Deputy Jones had given his affidavit, on July 17, 1997, which affidavit had been included in the state's response filed more than 90 days after Sterling's first state habeas petition had been filed

9

on December 30, 1996. Sterling waited to attempt to amend his petition more than four months after the state habeas evidentiary hearing, which took place on May 28 and 29, 1998, and at which Deputy Jones testified about his mistake. This amendment was not allowed pursuant to the 90-day extension deadline prescribed by state procedure. Tex. Code Crim. Proc. Ann. art. 11.071, § 4(f) (Vernon 1997) (now located at art. 11.071, § 4(b)). Sterling's state habeas petition was denied in 2001. The Texas Court of Criminal Appeals dismissed Sterling's second habeas petition filed later in 2001, which included his *Brady* claim regarding Deputy Jones' mistaken testimony, as an abuse of the writ. *Id.* § 5. That court also found that Sterling had not shown cause and prejudice to overcome the procedural default bar per the requirements of Article 11.071, § 5.

The state asserts that the district court was correct in its deferral to the state procedural bar applied to Sterling's *Brady* claim by the Court of Criminal Appeals. *See* *Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997) (holding that "violation of Texas's abuse-of-the-writ-doctrine constitutes an independent and adequate procedural bar to [] consideration of his barred claims").

The district court found no cause sufficient to excuse the procedural default. The court noted: the lapse of more than fourteen months between the written disclosure of Deputy Jones' mistake and Sterling's attempt to amend his petition; the lapse of

10

four months between Deputy Jones' testimony about his mistake and Sterling's attempt to amend his petition; that there is no allegation or evidence pertaining to the prosecution or Deputy Jones suppressing or hiding the evidence contained in Deputy Jones' affidavit; and that Sterling's counsel could have interviewed and, indeed, it would have been "sensible and advisable" to interview Deputy Jones regarding his trial testimony, particularly because one of Sterling's initial state habeas claims specifically attacked Deputy Jones' testimony as it related to whether there was another suspect who had not had an alibi and had been with Sterling at the time of the murder.

Here, based upon the two-prong threshold inquiry this Court performs under *Slack*, we find reasonable jurists would not be able to debate whether the district court was correct in its procedural ruling. We therefore do not need to address the possible validity of Sterling's *Brady* claim as he has not met one of the required prongs under *Slack*. 529 U.S. at 485 (encouraging courts to analyze the procedural prong first where possible).

**Whether a COA should issue on Sterling's due process and IAC claim as to the lack of a lesser-included offense ("LIO") instruction.**

Again, *Strickland* governs Sixth Amendment IAC claims; both deficient performance by counsel and resultant prejudice must be established. 466 U.S. at 687-88, 690. "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

11

exercise of reasonable professional judgment." *Id.* at 690. The Supreme Court case **Beck v. Alabama**, 447 U.S. 625 (1980), has been interpreted to mean that a death sentence does not comport with due process and may not be imposed if the jury was not permitted to consider an LIO instruction which was supported by the evidence. **Hopper v. Evans**, 456 U.S. 605, 610-11 (1982). The defendant must meet the state's standard for entitlement to an LIO instruction, as long as the standard is consistent with the Constitution. *Id.* at 611-12. Under Texas law, before an LIO instruction is warranted, "there must be some evidence directly germane to a lesser-included offense for the fact-finder to consider." **Dowthitt v. Johnson**, 230 F.3d 733, 757 (5th Cir. 2000) (citation omitted) (applying Texas law).

In Texas, a person commits murder if, *inter alia*, he "intentionally or knowingly causes the death of an individual." Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon 1988) (now located at § 19.02(b)(1)). A person commits capital murder if he commits murder as defined in § 19.02(a)(1) and, *inter alia*, he intentionally commits the murder in the course of committing robbery. *Id.* § 19.03(a)(2). Capital murder requires that the defendant have acted intentionally, not merely knowingly. A person acts with intent "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.*

12

§ 6.03(a). A person acts with knowledge "with respect to the nature of his conduct . . . when he is aware of the nature of his conduct" and "with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

Sterling argues that the evidence presented at trial entitled him to an LIO instruction on the crime of noncapital murder. Because his counsel failed to request or object to the omission of such an instruction, he asserts he was denied effective assistance of counsel. Sterling contends that proof of his intent as to murder is not clear because he did not bring a deadly weapon with him, he only struck the victim once, and he claims he was unsure whether the victim was still breathing. Sterling also points to Dunn's testimony at the state habeas hearing that the failure to request the LIO instruction may have been an "oversight."

The state responds that Donica testified at the hearing that counsel would have requested the LIO instruction if they "felt [it] was supported by the evidence." The state contends Sterling cannot demonstrate that the record contains any evidence permitting a rational jury to find that Sterling's conduct did not meet the requisite level of intent. The state further argues that the record evidence established that Sterling intentionally caved in the skull of the elderly victim with a bumper jack, then dragged the body through two barbed wire fences and secreted it more than

13

100 feet away from the road where it would not be found. If Sterling only intended to commit robbery, not murder, there was no need to crush Carthey's head in with a heavy blunt object, as the victim posed no physical threat.

The district court found that the state court was not unreasonable in its conclusion that Sterling had not demonstrated that there was any evidence submitted at trial to directly support the inclusion of an LIO instruction such that he was entitled to that instruction under Texas law; nor was the state court unreasonable in its application of *Strickland* to find that counsel's failure to request or object to the omission of an LIO instruction was not objectively unreasonable or prejudicial because the evidence did not support that LIO. Here, based upon the limited threshold inquiry this Court performs under the mandate of *Miller-El*, we find reasonable jurists would not be able to debate whether this issue should have been resolved in a different manner.

**Whether a COA should issue on Sterling's Sixth Amendment claim regarding unconstitutional harm due to the delay in counsel being appointed to represent him.**

In cases of trial error, such errors are subject on habeas review to harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), which permits relief in federal habeas only upon a showing that a particular constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623 (citing *Kotteakos v. United States*,

14

328 U.S. 750, 776 (1946)).  Trial error occurs during the presentation of the case to the jury and is amenable to harmless error analysis because it can be "quantitatively assessed in the context of other evidence presented."  *Id.* at 629 (citation omitted).  In cases of trial error, a petitioner must explain how "specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984).  However, at the other end of the spectrum lie systemic or structural errors that warrant automatic reversal, such as complete denial of counsel, denial of counsel at a critical stage of the criminal proceedings, or if counsel fails to subject the state's case to meaningful adversarial testing.  *Id.* at 658-59.  This type of constitutional error requires automatic reversal without a showing of harm; that is, prejudice is presumed.  *Id.* at 659.

Sterling argues that the district court improperly applied the harmless error analysis under *Brecht* when it considered whether a few months' delay in the appointment of his defense counsel on the Carthey murder case prejudiced Sterling's trial.  Sterling asserts the pretrial period from his arrest for the Carthey murder on May 20, 1988, to the time he was appointed counsel for the Carthey case on October 3, 1988, was a critical stage of the proceedings in which defense counsel should have been pursuing a detailed investigation for mitigating evidence to present at his punishment phase.  *See* *Wiggins*, 123 S. Ct. at 2535 (noting defense counsel's

15

obligation to thoroughly investigate defendant's background). Therefore, Sterling maintains the district court should have found systemic or structural error and presumed prejudice as dictated by *Chronic*.

The state responds first that it was Sterling himself who injected *Brecht*'s harmless error standard into this proceeding in his federal habeas petition, and thus any error is invited error. The state argues moreover that because Sterling never alleged at the state habeas level that harm should be presumed as a result of counsel's failure to discover or present mitigation evidence in the state courts, such a claim is procedurally defaulted. The state also contends the application of the harmless error standard by the district court was proper; the delay in appointment of Sterling's counsel does not implicate any of the systemic Sixth Amendment errors that "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). The state asserts there is no record evidence that officials in Navarro County knew of or were forwarded any request for counsel that Sterling made on July 4, 1988, in Hill County jail, where he was being detained and where he faced two other counts of capital murder.

Also, the state argues both members of Sterling's defense team had adequate time to prepare his defense; Sterling makes no

16

allegation that they failed to subject the prosecution's case to meaningful adversarial testing at any critical stage of the trial. Donica was appointed as one of his defense attorneys on October 3, 1998, less than a month after Sterling signed a pauper's oath on August 9, 1988, and two-and-a-half months after Sterling was indicted for the Carthey murder in Navarro County on July 14, 1988. Although Dunn was appointed to chair Sterling's defense on December 28, 1998, and the trial began on February 8, 1989, Dunn testified at the state habeas hearing that in spite of time constraints, he was able to conduct a more than adequate investigation into Sterling's background. Donica never averred that the timing of her appointment deprived her of adequate time to investigate; at the state habeas hearing, she testified Sterling's file contained "notes from quite a few witnesses that we talked to. Most of them punishment witnesses."

The state maintains Sterling has also failed to establish that prejudice resulted from any failure of counsel to investigate and present mitigation evidence. In fact, the state points to the fact that Sterling has never even suggested to this Court or the district court what mitigating evidence should have been introduced but was not investigated or discovered because of the delay in appointment of counsel.

The district court assumed trial error regarding the delay in the appointment of counsel for Sterling and proceeded to analyze whether Sterling suffered any prejudice from such delay. The

17

district court determined that the state habeas court was not unreasonable in its conclusion that the investigation of Sterling's case was not frustrated by the delay in appointment of his counsel or that such delay contributed to his conviction. This Court notes that the months-long delay in counsel being appointed in this case is troubling; however, the type of *Wiggins* or *Williams v. Taylor*, 529 U.S. 362 (2000), IAC error Sterling ultimately alleges resulted from the delay in the appointment of his counsel is one in which *Strickland*'s prejudice/harmless error prong is clearly applied, not automatically presumed.[2] Here, based upon the limited threshold inquiry we perform under the mandate of *Miller-El*, we find that reasonable jurists would not be able to debate whether this issue should have been resolved in a different manner.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing, for the reasons set forth above, we conclude that Sterling has satisfied this Court that reasonable jurists would find debatable the district court's resolution of the IAC issue regarding the admittance of a potentially racially biased juror. Thus, we GRANT Sterling's application for COA only as to

---

[2]We address Sterling's argument that prejudice should be presumed without deciding whether such an argument would be procedurally barred as an abuse of the writ under Texas law as Sterling did not raise this legal argument in his first state habeas petition, arguing only "Prejudicial Delay in the Appointment of Counsel."

that issue.  However, Sterling has failed to satisfy this Court that reasonable jurists would find debatable the district court's resolution of the other issues on which he requests a COA. Therefore, we DENY Sterling a COA as to those issues.  It is further ORDERED that the Clerk shall establish a briefing schedule and notify this panel when briefing is completed so that the panel can fix a time for oral argument on the IAC issue, if necessary.

**GRANTED in part.  DENIED in part.**