United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 27, 2005**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 3, 2005
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05 - 70010

_____

GUY STEPHEN ALEXANDER,

Petitioner - Appellant,

VERSUS

DOUG DRETKE, Director,
Texas Department of Criminal Justice, Institutional Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

_____

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Petitioner Guy Stephen Alexander was convicted of capital murder in Texas and sentenced to death. Alexander filed a petition for writ of habeas corpus in the District Court pursuant to 28 U.S.C. § 2254 which was dismissed. Alexander now requests that this Court issue a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c) on two claims: (1) denial of right to

_____

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

-1-

individualized sentencing by the trial court when it excluded expert testimony; (2) ineffective assistance of counsel. For the following reasons, we grant Alexander's application for COA on the ineffective assistance of counsel (IAC) claim, but we deny a COA on his remaining claim.

I.

The Court of Criminal Appeals succinctly summarized the facts in its direct appeal opinion as follows:

> Wilma Wofford, an elderly lady was murdered on the morning of January 24, 1989, in Houston. The deceased had suffered several lacerations to the head that were consistent with being struck by a blunt instrument. Portions of a broken brick were found near her body. Around the deceased's neck was an electrical cord, another cord, and a cloth belt. Her death was a result of asphyxiation. The deceased's automobile was missing. Other personal property missing from the residence included two rings and some silver coins, which were sold to a pawnshop. These items were sold by [Alexander] on January 24, 1989. Police ultimately recovered the television and binoculars. Four fingerprints and three palm prints, all matching [Alexander's] were found in the deceased's premises. A blood-stained print of a tennis shoe, matching [Alexander's] tennis shoe, was found on the floor of the deceased's premises.

> On January 26, 1989, Officer Kenneth Broadis and two other officers of the Jackson County Sheriff's Department in Mississippi observed [Alexander] in a fast food restaurant in Moss Point, Mississippi. [Alexander] appeared to be acting suspiciously. A short time later Officer Thomas Lamb of the Jackson County, Mississippi Sheriff's Department was on patrol when he observed [Alexander] driving the deceased's automobile in excess of the speed limit. Lamb had been advised that the automobile was stolen and was being sought in connection with a homicide case in Houston, Texas. After a brief pursuit, Lamb pulled the vehicle over and apprehended [Alexander]. In [Alexander's] possession were several of the deceased's credit cards. In the automobile police

-2-

discovered the deceased's typewriter and a set of keys, one of which fit the deadbolt lock at the deceased's home.

On January 27, 1989, [Alexander] gave a written statement in which he admitted killing the deceased. In the statement he detailed exactly how he had murdered her and what property he had taken from her. At [Alexander's] trial the statement was read to the jury over [Alexander's] objection.

Alexander v. State, No. 70941, slip op. at 1-2.

In August 1989, Alexander was convicted and sentenced to death for the capital offense of murdering Wilma Wofford in the course of committing or attempting to commit robbery. The Texas Court of Criminal Appeals affirmed that judgment and the United States Supreme Court denied certiorari. Subsequently, Alexander filed petitions for state habeas relief which were denied. He then sought federal habeas relief, which was also denied.

II.

Because Alexander filed his § 2254 petition for a writ of habeas corpus after April 24, 1996 (the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA)), his petition is subject to the procedures imposed by AEDPA and, therefore, his appeal is governed by the COA requirements of § 2253 (c). Sterling v. Dretke,100 Fed.Appx. 239, 241 (5th Cir. 2004), citing Slack v. McDaniel, 529 U.S. 473, 478 (2000).

In order to receive a COA, Alexander must make "a substantial showing of the denial of a constitutional right." 28 U.S.C.A. §

-3-

2253(c)(2). Meeting this standard "requires a petitioner to demonstrate that 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further'." Sterling, 100 Fed. Appx. at 242, citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). We evaluate petitioner's application with the understanding that "any doubts as to whether a COA should issue must be resolved in [Alexander's] favor." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

A.      Whether a COA should issue on Alexander's claim that he was denied the right to individualized sentencing when the trial court refused to admit the expert testimony of Dr. James Marquart.

At trial, the defense attempted to call Dr. Marquart as an expert witness to testify on the inaccuracy of jury predictions of future dangerousness and prison behavior. Marquart would have testified that juries cannot predict with any accuracy the future dangerousness of a capital murderer. More particularly, he would have stated that in 8 out of 10 cases where people are predicted to be dangerous, they have no significant disciplinary problems, which demonstrates that jurors err in the direction of predicting future dangerousness. The prosecution objected to Dr. Marquart's testimony as irrelevant, because Dr. Marquart had not interviewed Alexander and could offer no testimony about Alexander's individual threat to

society.  The trial court sustained the objection and excluded Marquart's testimony from the trial.  Alexander argues that the evidence was proper as mitigating evidence and, therefore, exclusion of it from trial raises at least a debatable claim about whether he was denied a constitutional right.

In its Opinion on Denial of Habeas Corpus, the district court found that the trial court did not err in excluding Marquart's testimony because the testimony would not have aided the jury in answering the special issue as required by Texas law.  We are persuaded by the district court's conclusion that, where the law of Texas requires the jury to make a finding of future dangerousness, then an expert witness' testimony criticizing that inquiry is irrelevant. As the district court said,

> Although Marquart *felt* that a jury could not adequately conclude whether or not Alexander would be a future danger, Texas required the jury to engage in that analysis. Marquart's testimony commented on Texas law, without addressing Alexander's specific danger to society. His opinion of Texas law added nothing to the jury's consideration of the special issues. *See Green v. Johnson*, 116 F.3d 1115, 1126 (5th Cir. 1997)(finding no error in the exclusion of Marquart's "generalized critique of the accuracy of the future dangerousness prediction").

DC Opinion, 6.

The district court was clearly correct in denying relief on this claim.  The district court's analysis leaves nothing open for debate among reasonable jurists on this issue.  We therefore deny COA on this claim.

B.   Whether a COA should issue on Alexander's ineffective assistance of counsel claim during the sentencing phase.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the defense. Wiggins v. Smith, 539 U.S. 510, 521 (2003), citing Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" in order to establish a deficient performance. Strickland, 466 U.S. at 688.

In this case, Alexander's claim stems from what he depicts as trial counsel's failure to adequately investigate his tumultuous family and psychological background.  During the punishment phase, Alexander's trial attorneys presented the expert testimony of two psychological witnesses - Dr. Walter Quijano and Dr. Sally Webster. Additionally, according to trial counsel's affidavits submitted to the state habeas court, they interviewed "several" of Alexander's family members, (although they specifically discuss only Alexander's sister and his father). The attorneys' affidavits indicate that the father was somewhat unavailable and that the sister's view was compromised by her "position in the family." The attorneys both claim to have been unaware of any evidence regarding: "disturbed family origin; genetic susceptibility to drug and alcohol dependency; orthopedic birth injury and subsequent uncorrected disability; parental medical neglect; significant

-6-

psychological disorder in childhood; developmental intellectual deficits and learning difficulties; peer isolation, alienation, and rejection; traumatic sexual exposure and precocious onset of puberty; and inadequate parental supervision and structure" that they failed to present. The state habeas court found that trial counsel made a reasonable effort to investigate and present facts for mitigation because it interviewed Alexander, his family members, and mental-health experts. The court also found that Alexander and his family were not completely forthcoming with trial counsel.

Alexander argues that trial counsel failed to offer any meaningful explanation of his family background or the difficulties of his childhood. Among other things, Alexander specifically alleges that the following amount to ineffective assistance of counsel on the part of his trial lawyers:

(1) Allowing Alexander's father's testimony that Alexander had a "normal" family to go uncontested when there was readily discoverable evidence that Alexander's father was homosexual, a situation which led to "ongoing strife" in Alexander's family.

(2) Not reviewing the family's medical records, which would have demonstrated significant evidence of Alexander's mother's dependence on prescription medication and Alexander's significant orthopedic impairments which led to his social isolation at school.

(3) Failing to discuss and produce Alexander's brother's testimony that their father had a "mean streak" and was bad tempered.

(4) Not discovering the substantial evidence of a severe psychological disorder in Alexander's childhood.

This evidence could easily have been obtained through a review of Alexander's school records. These records include, among other things, a history of transferring from school to school and a reported suicide attempt.

While counsel conducted considerable investigation designed to discover mitigating evidence and produced substantual evidence during the punishment phase, the Supreme Court has suggested that a reasonable investigation involves consideration of such factors as "medical history, educational history, employment and training history, *family and social history*, prior adult and juvenile correctional experience, and religious and cultural influences." Wiggins v. Smith, 539 U.S. 510, 524 (2003). Because we find that reasonable jurists could debate whether or not additional evidence of Alexander's background was available to and accessible by trial counsel and whether that evidence could have influenced the jury to not impose the death penalty, we grant a COA on Alexander's ineffective assistance of counsel claim.

The clerk will establish a briefing schedule to allow the parties to file supplemental briefs on this claim.

COA granted in part and denied in part.