IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0137-09






STEVEN GREY, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


HAYS COUNTY





 Keller, P.J., delivered the opinion of the Court in which Meyers, Keasler,
Hervey and Cochran, JJ., joined. Hervey, J., filed a concurring opinion in which
Meyers, and Keasler, JJ., joined. Cochran, J., filed a concurring opinion. 
Johnson, J., concurred. Price, Womack, and Holcomb, JJ., dissented.


 In the Royster-Rousseau line of cases, we established a two-pronged test for determining
when a trial judge should submit to the jury a lesser-included offense that is requested by the
defendant. (1) Under the second prong of the test, "some evidence must exist in the record that would
permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." (2) 
In Arevalo v. State, (3) this Court held that the second prong applies equally to the submission of lesser-included offenses that are requested by the State. We granted review in this case to determine the
following ground presented by the State: "Arevalo v. State should be overruled." Agreeing with the
State, we overrule Arevalo and hold that the State is not bound by the second prong of the Royster-Rousseau test.

I. BACKGROUND 


 Appellant was indicted for aggravated assault by causing bodily injury and using a deadly
weapon. The alleged deadly weapon was appellant's hand, used to strangle the victim. In addition
to instructions about the indicted offense, the jury charge contained an instruction on the lesser-included offense of simple assault by causing bodily injury. The jury charge was prepared by the
prosecutor's office, and one of the prosecutors stated on the record that she had no objection to it and
thought it was sufficient. But defense counsel objected to the lesser-included offense instruction. (4) 
The jury found appellant guilty of the lesser-included offense of simple assault.

 On appeal, appellant claimed that the submission of the lesser-included offense was error. 
The court of appeals agreed and reversed the conviction. (5)

II. ANALYSIS


A. Rules for Overruling Precedent


 Though it is "[o]ften better to be consistent than right," (6) precedent may be overruled "if the
reasons for doing so are weighty enough." (7) Factors that support the overruling of precedent include:

(1) that the original rule or decision was flawed from the outset, 


(2) that the rule's application produces inconsistent results, 


(3) that the rule conflicts with other precedent, especially when the other precedent
is newer and more soundly reasoned, 


(4) that the rule regularly produces results that are unjust, that are unanticipated by
the principle underlying the rule, or that place unnecessary burdens on the system,
and 


(5) that the reasons that support the rule have been undercut with the passage of
time. (8)


B. The Remedy in Arevalo


 One obvious flaw in the rule laid down by Arevalo and its progeny, one that produces
inconsistent and unjust results in every single case in which the rule is applied, is the remedy. When
a lesser-included offense is submitted in violation of Arevalo, and the defendant is convicted of that
offense, the remedy this Court has imposed is a remand for a new trial on the very same lesser-included offense that the defendant has just claimed should never have been submitted. (9) Such a
result is "illogical," (10) but we fashioned this remedy because alternative remedies seemed unavailable
or worse. Because a conviction on the lesser offense operates as an acquittal of the greater offense, (11)
retrial on the greater offense is not possible. (12) But an outright acquittal of the criminal charge would
be absurd where the evidence was in fact legally sufficient to support a conviction for the lesser-included offense. (13) 

 C. Source of the Rule in Arevalo 


1. Constitution? 


 So where did the rule in Arevalo come from, and what is the legal basis for its existence? 
Arevalo's holding was based upon the "guilty only" requirement that is the second prong of the
Royster-Rousseau test. (14) In dissents in Arevalo, Presiding Judge McCormick and Judge Meyers both
suggested that the "guilty only" requirement has constitutional underpinnings, describing when a
lesser-included-offense instruction is required, but not necessarily describing all the circumstances
under which such an instruction is permitted. (15) In Rousseau, we had clarified the "guilty only" prong
(but did not change existing law) by borrowing language from the federal standard, which we
observed was stated in the Supreme Court decision of Hopper v. Evans (16) and quoted by the Fifth
Circuit. (17) Evans discussed Beck v. Alabama, (18) in which the Supreme Court concluded that a failure
in a capital case to submit a lesser-included offense when raised by the evidence violates the
constitution because there is an unwarranted risk that "a jury might convict a defendant of a capital
offense because it found that the defendant was guilty of a serious [but lesser] crime." (19)

 Evans also discussed the plurality opinion of Roberts v. Louisiana, (20) which addressed a
situation "obverse" to the one at issue in Beck, (21) and thus analogous to the Court's holding in
Arevalo. In Roberts, a Louisiana statute required the submission in a capital case of lesser-included
offenses "even if there was not a scintilla of evidence to support the lesser verdicts." (22) The practice
was impermissible because "it invited the jurors to disregard their oaths and convict a defendant of
a lesser offense when the evidence warranted a conviction of first-degree murder, inevitably leading
to arbitrary results." (23)

 Evans, Beck, and Roberts were all capital cases. The Supreme Court expressly reserved the
question of whether the federal constitution can require the submission of a lesser-included offense
in a non-capital case, (24) and more recently it has suggested that Beck's holding may be limited to
cases in which the death penalty was automatic upon conviction for the greater offense. (25) We have
assumed that the erroneous failure to submit a lesser-included-offense instruction requested by the
defense in a non-capital case constitutes ordinary jury charge error under Almanza v. State (26) to be
analyzed for some harm when error was preserved. (27) Almanza's "some harm" standard applies only
to non-constitutional errors, (28) and in any event, we used a "Beck-like" rationale to assess harm rather
than holding that Beck controls the case. (29)

 The arguable relevance of Roberts to Texas jurisprudence is far more tenuous. The Roberts
opinion found arbitrariness in the context of a scheme that automatically imposed the death penalty
upon conviction for first-degree murder. (30) The submission of lesser-included offenses was the only
method by which the jury was given the discretion to determine whether a convicted defendant
would receive the death penalty, and the Supreme Court held that such a method did not provide
sufficient guidance. (31) In Lesko v. Lehman, the Third Circuit distinguished Roberts on the basis of
this factual context and rejected a defendant's claim that constitutional error resulted from the
submission of a lesser-included offense that was not raised by the evidence. (32) "[A]ssuming
arguendo that the trial evidence could not support a voluntary manslaughter verdict, we do not
believe that the fact that the court instructed on that offense violates the rationale of Roberts." (33) The
submission of the lesser offense did not violate Roberts because the death penalty was not
mandatory, the jury was permitted to consider the full range of mitigating evidence, there were
standards to guide the jury's sentencing discretion, and meaningful appellate review was available. (34)

2. Statute?


 Though the Court's opinion in Arevalo cited to articles 37.08 and 37.09, (35) neither statute
contains any language that suggests the application of a "guilty only" requirement for determining
when a lesser-included offense should be submitted. (36) One could argue that a lesser-included offense
does not become "law applicable to the case" under Article 36.14 (37) unless it is raised by the
evidence. But such an argument begs the question of what it means for a lesser offense to be "raised
by the evidence." The propriety of the "guilty only" requirement appears to be a matter of common
law, (38) which will be discussed in more detail below. 

D. The Reasoning Behind the Rule in Arevalo


 The "guilty only" requirement was originally articulated by this Court in Daywood v. State. (39) 
The only reasoning given for this requirement was that it had to be met to "raise[] the issue" of the
lesser-included offense. (40) In Arevalo, this Court conceded that we had "never stated a rationale for
the second prong of the [Royster-Rousseau] test," but we "thought the rationale was obvious." (41) We
said that the "guilty only" rule was designed to preserve the integrity of the jury as a factfinder by
ensuring that it was instructed on a lesser-included offense "only when that offense constitutes a
valid, rational alternative to the charged offense." (42) 

 The Court in Arevalo then made an inferential leap: It held that this rationale "is as applicable
to the State's request for a lesser-included offense as it is to a defendant's request." (43) Why? Because
a lesser-included-offense instruction "must not constitute an invitation to the jury to reach an
irrational verdict." (44)

 But the Court did not ask or answer the next obvious question: How does a lesser-included-offense instruction invite a jury to reach an irrational verdict? If the lesser offense is viewed in
isolation, a jury's verdict would be rational so long as the lesser offense is included in the charging
instrument and supported by legally sufficient evidence. (45) The "guilty-only" prong of the Royster-Rousseau test requires, however, that we view the rationality of the lesser offense, not in isolation,
but in comparison to the offense described in the charging instrument. But why should we make that
comparison? The answer must be that the State is entitled to pursue the charged offense and,
therefore, is entitled to receive a response from the jury on whether the defendant is guilty of the
charged offense. Is the defendant similarly entitled to a response from the jury on the charged
offense? The answer to that question is clearly no. It is the State, not the defendant, that chooses
what offense is to be charged. In fact, the State can abandon an element of the charged offense
without prior notice and proceed to prosecute a lesser-included offense. (46) If the State can abandon
the charged offense in favor of a lesser-included offense, there is no logical reason why the State
could not abandon its unqualified pursuit of the charged offense in favor of a qualified pursuit that
includes the prosecution of a lesser-included offense in the alternative.

E. The Consequences of the Rule in Arevalo


 We have already addressed one detrimental consequence of the rule in Arevalo: the remedy
for the supposed error is illogical. Another detrimental consequence is that the prosecutor may be
faced with a situation in which any decision he makes carries a high risk of error. If the prosecutor
requests a lesser-included offense, he may run the risk of a reversal under Arevalo. But if the
prosecutor fails to request a lesser-included offense, he may also run the risk of an outright acquittal
by a jury or an acquittal for legal insufficiency on appeal. (47) 

 The present case is illustrative. To convict appellant of aggravated assault in this case, the
State had to prove that he used or exhibited a deadly weapon. (48) The alleged deadly weapon in this
case was appellant's hand. The court of appeals held that the evidence in this case does not show
that the defendant was guilty only of a simple assault because the evidence shows only that the
defendant's hand was a deadly weapon. (49) But it is easy to see how a jury might not be willing to find
that a person's hand is a deadly weapon, despite all the evidence in favor of that proposition. And
at the time of trial, the State might have legitimately perceived the possibility (though unlikely) that
an appellate court would decide that the evidence was legally insufficient to prove the deadly weapon
element.

 Arevalo's application is not limited to cases in which the prosecutor is uncertain how a jury
or an appellate court will view the strength of the State's case. (50) There can be a legitimate dispute
about the meaning of the language of the aggravating element that distinguishes the charged offense
from the lesser-included offense, (51) or the possibility could exist that the aggravating element renders
the charged offense unconstitutional. (52) And with respect to disputes about the meaning of statutory
language, appellate interpretations of statutes are not always foreseeable and can even involve the
overruling of precedent. (53)

 The cautious approach for the prosecutor to take would be - or at least should be - to request
the lesser-included offense. Allowing submission of lesser offenses when requested by the
prosecutor would serve at least two important interests. First, society has an interest in convicting
and punishing people who are guilty of crimes. When, in the prosecutor's judgment, submission of
the lesser-included offense will enhance the prospects of securing an appropriate criminal conviction
for a defendant who is in fact guilty, society's interests are best served by allowing the submission. 
Second, the prosecutor has "the primary duty . . . not to convict, but to see that justice is done." (54) 
Even if the prosecutor believes in a given case that he will secure a conviction on the charged offense
if the only alternative is acquittal, he might also believe that the jury should be given the option to
decide whether a conviction on the lesser offense is more appropriate.

 Of course, the prosecutor could simply abandon the charged offense in favor of the lesser-included offense. (55) But doing so would reflect not caution but capitulation. If the prosecutor
believes the evidence for the charged offense is strong but also believes that the jury ought to be able
to consider the lesser-included offense, then abandoning the charged offense as a remedy for the
dilemma created by Arevalo would be overkill. And the decision on whether to abandon the charged
offense would itself pose a dilemma because the prosecutor would not want to effectuate an
abandonment unnecessarily.

F. Conclusion


 The common-law rule established in Arevalo is based on flawed premises, places undue
burdens on the prosecutor, and results in an illogical remedy. Consequently, we overrule Arevalo.

 The judgment of the court of appeals is reversed, and the case is remanded to address
appellant's remaining points of error. 

Delivered: November 18, 2009

Publish

 
1. See Royster v. State, 622 S.W.2d 442 (Tex. Crim. App. 1981)(plurality op.); Rousseau v.
State, 855 S.W.2d 666 (Tex. Crim. App. 1993).
2. Rousseau, 855 S.W.2d at 673.
3. 943 S.W.2d 887 (Tex. Crim. App. 1997).
4. Defense counsel objected as follows: "I would object to the lesser-included offense of
misdemeanor assault being included. The reason is because of the strangled. There is no definition. 
The definition is to cause death. A lesser included is we strike elements or facts in and see if we
have another lesser offense. We strike deadly weapon, well, now we have strangled indicating death
of a misdemeanor." After the objection was overruled, defense counsel requested an instruction on
the lesser-included offense of Class C misdemeanor assault by offensive touching. That request was
denied. The State does not raise before us any claim regarding the sufficiency of appellant's trial
objection to the lesser-included offense that was submitted. 
5. Grey v. State, 269 S.W.3d 785 (Tex. App.-Austin 2008).
6. Malik v. State, 953 S.W.2d 234, 236 (Tex. Crim. App. 1997).
7. Ex parte Lewis, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007).
8. Id.
9. Hampton v. State, 165 S.W.3d 691, 694 (Tex. Crim. App. 2005).
10. Hampton v. State, 109 S.W.3d 437, 442 (Tex. Crim. App. 2003)(Keller, P.J., dissenting).
11. Green v. United States, 355 U.S. 184 (1957); Tex. Code Crim. Proc. art. 37.14.
12. Hampton, 165 S.W.3d at 694; see also Hampton, 109 S.W.3d at 442 (Keller, P.J.,
dissenting).
13. Hampton, 165 S.W.3d at 694.
14. See Arevalo, 943 S.W.2d at 888-90.
15. Arevalo, 943 S.W.2d at 890-91 (McCormick, P.J., dissenting); id. at 892 n.2, 893 (Meyers,
J., dissenting).
16. 456 U.S. 605 (1982).
17. Rousseau, 855 S.W.2d at 672-73, 673 n.4; see Evans, 456 U.S. at 612 (quoting the
federal rule).
18. 447 U.S. 625 (1980).
19. Evans, 456 U.S. at 610 (citing Beck, 447 U.S. at 642)(bracketed material inserted).
20. 428 U.S. 325 (1976)(plurality op.).
21. Evans, 456 U.S. at 611.
22. Evans, 456 U.S. at 611 (quoting Roberts, 428 U.S. at 334).
23. Id. (citing Roberts, 428 U.S. at 335).
24. Beck, 447 U.S. at 638 n.14; see also Howell v. Mississippi, 543 U.S. 440, 444-45 (2005).
25. Howell, 543 U.S. at 445.
26. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984).
27. Saunders v. State, 913 S.W.2d 564, 570-72 (Tex. Crim. App. 1995). 
28. Jimenez v. State, 32 S.W.3d 233, 237 (Tex. Crim. App. 2000).
29. Saunders, 913 S.W.2d at 571 n.3.
30. Roberts, 428 U.S. at 336.
31. Id. at 335.
32. 925 F.2d 1527, 1552-53 (3d Cir. 1991).
33. Id. at 1553.
34. Id.; see also McDougall v. Dixon, 921 F.2d 518, 531-32 (4th Cir. 1990)(distinguishing
Roberts on the basis that there was evidence upon which a jury could have returned a verdict on the
lesser offense and North Carolina did "not have a mandatory death sentence for first degree murder
as Louisiana had at the time of Roberts").
35. See id. at 888 (citing Tex. Code Crim. Proc. arts. 37.08, 37.09).
36. Art. 37.08 provides: "In a prosecution for an offense with lesser included offenses, the jury
may find the defendant not guilty of the greater offense, but guilty of any lesser included offense."
Art. 37.09 provides: 


An offense is a lesser included offense if:


 (1) it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged;


 (2) it differs from the offense charged only in the respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission;


 (3) it differs from the offense charged only in the respect that a less culpable
mental state suffices to establish its commission; or


 (4) it consists of an attempt to commit the offense charged or an otherwise
included offense.
37. See Tex. Code Crim. Proc. art. 36.14 ("the judge shall . . . deliver to the jury . . . a written
charge distinctly setting forth the law applicable to the case").
38. See Tex. Code Crim. Proc. art. 1.27 ("If this Code fails to provide a rule of procedure
in any particular state of case which may arise, the rules of the common law shall be applied and
govern.").
39. 157 Tex. Crim. 266, 269, 248 S.W.2d 479, 481 (Tex. Crim. App. 1952).
40. Id.
41. Arevalo, 943 S.W.2d at 889 (bracketed material substituted for original).
42. Id.
43. Id. at 889-90.
44. Id. at 890.
45. See Wasylina v. State, 275 S.W.3d 908, 909-10 (Tex. Crim. App. 2009).
46. Eastep v. State, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997).
47. See Collier v. State, 999 S.W.2d 779, 790 (Tex. Crim. App. 1999)(Keller, J., dissenting);
id. at 794 (McCormick, P.J., dissenting on motion for rehearing); Haynes v. State, 273 S.W.3d 183
(Tex. Crim. App. 2008)(reformation to lesser-included offense not permitted when the lesser-included offense is not submitted and the prosecutor failed to request its submission).
48. See Tex. Pen. Code §22.02(a)(2).
49. Grey, 269 S.W.3d at 788-89.
50. For an example of a dispute about the strength of the State's case, see Laster v. State, 275
S.W.3d 512, 523-24 (Tex. Crim. App. 2009), and id. at 528-533 (Cochran, J., dissenting). Judge
Cochran noted that, if her view were correct, the conviction could be reformed to reflect a lesser
included offense that was submitted to the jury, with a remand for resentencing. Id. at 533, 533 n.40
(Cochran, J., dissenting). 
51. See Lomax v. State, 233 S.W.3d 302 (Tex. Crim. App. 2007)(felony DWI can be an
underlying offense for felony murder) and id. at 311 n.31 (because lesser offense of felony DWI was
submitted, judgment could have been reformed to lesser offense if felony murder conviction had
been set aside); Haynes v. State, 254 S.W.3d 466, 469-70 (Tex. App.-Houston [1st Dist.]
2007)(rejecting State's contention that the definition of "household" in Tex. Fam. Code §71.006
applies to prosecutions under Tex. Penal Code §22.01(b)(2)) and Haynes, 273 S.W.3d at 185, 
passim (lesser-included offense of assault was not submitted, so no reformation possible).
52. See Long v. State, 931 S.W.2d 285, 294 (Tex. Crim. App. 1996)(element distinguishing
stalking from lesser offense rendered stalking offense unconstitutional).
53. See Roberts v. State, 273 S.W.3d 322, 330-31, 332 (Tex. Crim. App. 2008)(overruling
holding in Norris v. State, 902 S.W.2d 428 (Tex. Crim. App. 1995), regarding the proper use of
transferred intent and reforming judgment to reflect conviction for lesser-included offense of murder
and remanding for resentencing).
54. Tex. Code Crim. Proc. art. 2.01; Haynes, 273 S.W.3d at 191 (Johnson, J., concurring).
55. See Eastep, cited above.