HOPPER, CORRECTIONS COMMISSIONER, ET AL. *v.*
EVANS

No. 80–1714.   Argued March 24, 1982—Decided May 24, 1982

BURGER, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BRENNAN and MARSHALL, JJ., filed an opinion concurring in part and dissenting in part, *post*, p. 614.

*Edward E. Carnes*, Assistant Attorney General of Alabama, argued the cause for petitioners.   With him on the

briefs were *Charles Graddick*, Attorney General, and *Susan Beth Farmer*, Assistant Attorney General.

*John L. Carroll* argued the cause for respondent. With him on the brief was *Steven Alan Reiss*.

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether, after invalidation of a state law which precluded instructions on lesser included offenses in capital cases, a new trial is required in a capital case in which the defendant's own evidence negates the possibility that such an instruction might have been warranted.

## I

### A

Shortly after respondent was released on parole from an Indiana prison in 1976, he and Wayne Ritter, who had been a fellow inmate, embarked on what respondent himself described as a cross-country crime "spree." App. 9. According to respondent's testimony, they committed about 30 armed robberies, 9 kidnapings, and 2 extortion schemes in seven different States during a 2-month period. Respondent testified that on January 5, 1977, he and Ritter entered a pawnshop in Mobile, Ala., intending to rob it. Ritter asked the pawnshop owner, Edward Nassar, to show him a gun. When Nassar handed the gun to Ritter, respondent pulled his own gun and announced that he intended to rob him. Nassar dropped to his hands and knees and crawled toward his office. Respondent then shot him in the back, killing him. Nassar's two daughters, aged seven and nine, were in the pawnshop at the time of the murder.

Respondent and Ritter were captured by the Federal Bureau of Investigation in Little Rock, Ark., on March 7, 1977. A gun, which was identified by ballistics tests as the weapon used to kill Nassar, was found in their motel room and the

gun Nassar showed Ritter at the pawnshop was found in their car. After being fully advised of his constitutional rights, respondent signed a detailed written confession on March 8, 1977, admitting that he shot Nassar in the back. He repeated and elaborated on his confession before a grand jury in Mobile on April 4, 1977. He told the grand jury that Nassar was not the only person he had ever killed, that he felt no remorse because of that murder, that he would kill again in similar circumstances, and that he intended to return to a life of crime if he was ever freed. Since he doubted that he ever would be freed, he told the grand jury that he wanted to be executed as soon as possible. The grand jury indicted him under Ala. Code § 13–11–2(a)(2) (1975), which makes "[r]obbery or attempts thereof when the victim is intentionally killed by the defendant" a capital offense.

## B

Under Alabama law, capital punishment may be imposed only after conviction by a jury. *Prothro* v. *State*, 370 So. 2d 740, 746–747 (Ala. Crim. App. 1979). The prosecution, therefore, declined to accept respondent's guilty plea. A psychiatrist, appointed by the court, concluded that respondent was competent to stand trial. Respondent and Ritter were tried together. The evidence against respondent included his confession to the Federal Bureau of Investigation, two eyewitnesses who identified him, and ballistic evidence matching the bullet that killed Nassar with respondent's gun.

Against his attorneys' advice, respondent testified in his own behalf. He told the jury he had shot Nassar, and informed it that he had "no intention whatsoever of ever reforming in any way" and would return to a life of crime if released. App. 38. Release from prison in the near future appeared unlikely since he was wanted for a number of crimes in different States as a result of the armed robbery spree. Respondent told the jury: "I would rather die by

electrocution than spend the rest of my life in the penitentiary. So, I'm asking very sincerely that you come back with a positive verdict for the State." *Ibid.*

The judge instructed the jury that it could not convict respondent merely on the basis of his confession, but must consider all the evidence, and could find him guilty only if the State had proved its case beyond a reasonable doubt. Prior to this Court's judgment in *Beck* v. *Alabama,* 447 U. S. 625 (1980), a jury hearing a capital case in Alabama was precluded by statute from considering lesser included offenses. Alabama required a jury to convict the defendant of the capital offense charged or return a verdict of not guilty. The jurors were instructed to impose the death sentence if they concluded that the defendant was guilty, and they were not told that the trial judge could reduce the sentence to a sentence of life imprisonment without possibility of parole. *Id.,* at 639, n. 15. The jury in this case returned its verdict of guilty in less than 15 minutes.

The trial judge sentenced respondent to death and entered written findings that the aggravating circumstances in his case far outweighed any mitigating circumstances. The conviction and sentence were subject to automatic appeal and were affirmed on review. *Evans* v. *State,* 361 So. 2d 654 (Ala. Crim. App. 1977), aff'd, 361 So. 2d 666 (Ala. 1978), cert. denied, 440 U. S. 930 (1979).

## C

Respondent's mother initiated habeas corpus proceedings under 28 U. S. C. § 2254. Respondent then changed his previous attitude of desiring execution. His habeas corpus petition to the District Court for the Southern District of Alabama challenged his conviction on a number of grounds, including an allegation that he had been convicted and sentenced under a statute which unconstitutionally precluded consideration of lesser included offenses. He did not allege that he had been

prejudiced by the Alabama death penalty statute's preclusion clause, but instead argued that the statute was unconstitutional on its face and that his conviction therefore must be set aside. The District Court held a hearing, and subsequently rejected respondent's arguments, noting that respondent had confessed at least four times to shooting Nassar. *Evans* v. *Britton*, 472 F. Supp. 707, 711–712 (1979).

Subsequently, in *Beck* v. *Alabama, supra,* we held that the sentence of death could not be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included noncapital offense, provided that the evidence would have supported such a verdict. The petitioner in *Beck* was also involved in a robbery in the course of which a murder occurred. He contended, however, that he did not kill the victim or intend his death. Instead he claimed that while he was attempting to tie up the victim, an 80-year-old man, his accomplice unexpectedly struck and killed the man. The State conceded that, on the evidence in that case, Beck would have been entitled to an instruction on the lesser included, noncapital offense of felony murder except for the preclusion clause. *Id.*, at 629–630.

Our opinion in *Beck* stressed that the jury was faced with a situation in which its choices were only to convict the defendant and sentence him to death or find him not guilty. The jury could not take a third option of finding that although the defendant had committed a grave crime, it was not so grave as to warrant capital punishment. We concluded that a jury might have convicted Beck but also might have rejected capital punishment if it believed Beck's testimony. On the facts shown in *Beck*, we held that the defendant was entitled to a lesser included offense instruction as a matter of due process. *Id.*, at 637.

In the instant case, the Court of Appeals for the Fifth Circuit, purporting to rely on *Beck*, reversed the District

Court's denial of relief. *Evans* v. *Britton*, 628 F. 2d 400 (1980), modified, 639 F. 2d 221 (1981). We granted certiorari, 452 U. S. 960 (1981), and we now reverse.

## II

### A

The Court of Appeals misread our opinion in *Beck*. The *Beck* opinion considered the alternatives open to a jury which is constrained by a preclusion clause and therefore unable to convict a defendant of a lesser included offense when there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense. In such a situation, we concluded, a jury might convict a defendant of a capital offense because it found that the defendant was guilty of a serious crime. 447 U. S., at 642. Or a jury might acquit because it does not think the crime warrants death, even if it concludes that the defendant is guilty of a lesser offense. *Id.*, at 642–643. While in some cases a defendant might profit from the preclusion clause, we concluded that "in every case [it] introduce[s] a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case." *Id.*, at 643.

The Court of Appeals, quoting this statement from our *Beck* opinion, repeatedly stressed the words "in every case." 639 F. 2d, at 223–224; 628 F. 2d, at 401. It concluded that we meant that the Alabama preclusion clause was a "brooding omnipresence" which might "infect virtually every aspect of any capital defendant's trial from beginning to end." *Ibid.* It is important to note that our holding in *Beck* was limited to the question submitted on certiorari, and we expressly pointed out that we granted the writ in that case to decide whether a jury must be permitted to convict a defendant of a lesser included offense "when the evidence would have supported such a verdict." 447 U. S., at 627. Thus, our holding was that the jury must be permitted to consider a verdict of guilt of a noncapital offense "in every case" in which "the evidence would have supported such a verdict."

Our holding in *Beck*, like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided. See, *e. g.*, *Roberts* v. *Louisiana*, 428 U. S. 325, 334 (1976) (plurality opinion); *Woodson* v. *North Carolina*, 428 U. S. 280, 303 (1976) (plurality opinion); *Gregg* v. *Georgia*, 428 U. S. 153, 188 (1976) (principal opinion); *Furman* v. *Georgia*, 408 U. S. 238, 313 (1972) (WHITE, J., concurring); *id.*, at 309–310 (Stewart, J., concurring); and *id.*, at 398–399 (BURGER, C. J., dissenting).

In *Roberts* v. *Louisiana, supra,* the Court considered a Louisiana statute which was the obverse of the Alabama preclusion clause. In Louisiana, prior to *Roberts*, every jury in a capital murder case was permitted to return a verdict of guilty of the noncapital crimes of second-degree murder and manslaughter, "even if there [was] not a scintilla of evidence to support the lesser verdicts." *Id.*, at 334 (plurality opinion). Such a practice was impermissible, a plurality of the Court concluded, because it invited the jurors to disregard their oaths and convict a defendant of a lesser offense when the evidence warranted a conviction of first-degree murder, inevitably leading to arbitrary results. *Id.*, at 335. The analysis in *Roberts* thus suggests that an instruction on a lesser offense in this case would have been impermissible absent evidence supporting a conviction of a lesser offense.

*Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in noncapital cases is that a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position." *Fulghum* v. *State*, 291 Ala. 71, 75, 277 So. 2d 886, 890 (1973).

The federal rule is that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Keeble* v. *United States,* 412 U. S. 205, 208 (1973). The Alabama rule clearly does not offend federal constitutional standards, and no reason has been advanced why it should not apply in capital cases.

## B

The uniqueness of respondent's claims has been outlined in the statement of facts, but those facts merit emphasis for they bear on the key issue of whether there was any evidentiary basis to support a conviction of a lesser included offense. From the outset, beginning with his appearance before the grand jury, respondent made it crystal clear that he had killed the victim, that he intended to kill him, and that he would do the same thing again in similar circumstances. At trial, he testified that he always tried to choose places to rob so that he could avoid killing people. However, he also testified that, if necessary, he was always prepared to kill. App. 19–21. Respondent was convicted, under Ala. Code § 13–11–2(a)(2) (1975), of robbery when the victim was intentionally killed.

In this Court, respondent contends that he could have been convicted under Ala. Code § 13–1–70 (1975), which makes a "homicide . . . committed in the perpetration of, or the attempt to perpetrate, any . . . robbery" a noncapital offense. Respondent concedes that a conviction is warranted under this section only when a defendant lacks intent to kill. Brief for Respondent 26. Respondent's current claim is a curious—even cynical—new version of the claim of self-defense. His testimony given before the grand jury was:

"I was going to shoot him if he reached for a—a firearm, yeah. Uh, of course, our intention always, you know, never to hurt anybody, *if you don't have to.* That's—

that's stupidity, you know. But if it ever came down to a case of, you know, *of me or somebody else, well that's—that's pure instinct. That's self-preservation. I'm going to fire; I'm not going to waste any time . . . ."* App. 19 (emphasis supplied).

On the basis of this testimony, he implies that he had no malice toward the victim nor intent to kill him. Of course, it can be argued that this case is not one of a killer with affirmative, purposeful malice; his claim bears some resemblance to that of a hired killer who, bearing no ill will or malice toward his victim, simply engages in the pursuit of his chosen occupation. Respondent thus blandly—even boldly—proclaims that, although he will *try* not to kill his victims, he will do it if he finds it to be an occupational necessity.

It would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back in the circumstances shown here. The evidence not only supported the claim that respondent intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim. An instruction on the offense of unintentional killing during this robbery was therefore not warranted. See *Fulghum, supra.*

Finally, the Court of Appeals stated, and respondent argues, that the mere existence of the preclusion clause so "infected" respondent's trial that he must be retried so that he may have the opportunity to introduce evidence of some lesser included offense. Respondent suggests no plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial.* The preclusion clause did not prejudice re-

---

*In another case with different facts, a defendant might make a plausible claim that he would have employed different trial tactics—for example, that he would have introduced certain evidence or requested certain jury

spondent in any way, and a new trial is not warranted. See *Chapman* v. *California*, 386 U. S. 18, 24 (1967).

*Reversed.*

JUSTICE BRENNAN and JUSTICE MARSHALL, concurring in part and dissenting in part.

We join the opinion of the Court to the extent that it reverses the judgment of the Court of Appeals invalidating respondent's conviction. But we adhere to our view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring). Consequently, we would affirm the judgment of the Court of Appeals to the extent that it invalidates the sentence of death imposed upon respondent.

---

instructions—but for the preclusion clause. However, that is not this case, since the defendant here confessed that he shot the victim and then pleaded guilty to capital murder.