ON APPLICATION FOR REHEARING
Phillip Wayne Tomlin was convicted under Alabama's 1975 death penalty statute of first degree murder wherein two or more people are intentionally killed by one or a series of acts and of first degree murder done for a pecuniary or other valuable consideration or pursuant to a contract or for hire. Sections 13-11-2 (a)(10) and (7), Code of Alabama (1975) (repealed). The trial court held a sentencing hearing and entered an order setting out its findings as to aggravating and mitigating circumstance and sentencing the defendant to death. On appeal the Court of Criminal Appeals, 443 So.2d 47, affirmed the defendant's conviction, but found the trial court's sentencing order defective in several aspects. It entered an order remanding the cause with instructions to the trial court to amend its sentencing order to comply with the Court of Criminal Appeals' decision.
While Tomlin's petition for writ of certiorari was pending before this court, the United States Supreme Court handed downBeck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392
(1980), in which it found Alabama's 1975 death penalty statute defective because the preclusion clause in the act prohibited juries from considering any lesser included offenses. Because we interpreted Beck v. Alabama to require *Page 62 
that all defendants theretofore convicted under that statute be granted new trials, we entered an order reversing Tomlin's conviction.
The State filed an application for rehearing in which it asked us to reconsider our interpretation of Beck v. Alabama. While the application for rehearing was pending, the Supreme Court released its opinion in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049,72 L.Ed.2d 367 (1982). Evans had been convicted and sentenced to death after testifying that he intentionally shot the proprietor of a pawnshop during a robbery. Because Evans suggested no plausible claim not contradicted by his own testimony at trial which would entitle him to a jury instruction on a lesser included offense, the Court ruled that he had not been prejudiced by the preclusion clause. It concluded, therefore, that Evans was not entitled to a new trial. Hopper, supra, 456 U.S. at 613-14,102 S.Ct. at 2054. We hereby withdraw our previous opinion in this case in order to enter an order in accordance with Hopper
and its progeny.
A defendant convicted under § 13-11-2 of the 1975 statute is entitled to a new trial because of the preclusion clause in the statute if there was evidence introduced at trial which would have warranted a jury instruction on a lesser included offense or if the defendant suggests any plausible claim not contradicted by his own testimony which he might conceivably have made which would have entitled him to a jury instruction on a lesser included offense. Cook v. State, 431 So.2d 1322, 1324 (Ala. 1983).
Tomlin testified that he was in Texas at the time of the killings. We examined in Cook v. State, supra, the effect of an alibi defense on the question of whether a defendant convicted under the 1975 death penalty statute is entitled to a new trial because of the preclusion clause. We concluded that when a defendant testified that he was in a distant location when the crime was committed, his own testimony directly contradicted any evidence he might have introduced to show that he was guilty of a lesser included offense. Cook, supra, at 1325.
Cook is clearly controlling here. The petitioner argued that, but for the preclusion clause, he might have introduced evidence that Daniels, who was allegedly with Tomlin at the time in question, did the killing, or that Tomlin intentionally killed only one of the victims, or that Tomlin was under the influence of drugs at the time of the killings. All of the claims suggested by the petitioner are, however, in conflict with Tomlin's own testimony. Tomlin is not, therefore, entitled to a new trial based on the presence of the preclusion clause in the statute.
Tomlin raised the following additional issues in his petition for writ of certiorari:
 (1) Whether counts one and three of the indictment were defective;
 (2) Whether the trial court should have refused to allow the State to call a witness omitted from a list of potential witnesses supplied by the State;
 (3) Whether the trial court should have granted a motion to exclude as to count two of the indictment which charged the defendant with murder for pecuniary or other valuable consideration or pursuant to a contract or for hire;
(4) Whether the jury charge was sufficient;
(5) Whether the verdict form was sufficient;
 (6) Whether the trial court properly responded to questions from the jury as to what would happen in the event of a hung jury.
 I SUFFICIENCY OF COUNTS ONE AND THREE OF THE INDICTMENT
Tomlin did not file his demurrer to the indictment until after the jury was empaneled. By appearing and entering a plea at his arraignment, the petitioner waived any irregularities in the indictment unless the indictment was so defective that it left *Page 63 
the accused unaware of the nature and cause of the charges against him. Canada v. State, 421 So.2d 140, 145 (Ala.Cr.App. 1982).
Omitting the formal parts of the indictment, count one charges that Tomlin:
 ". . . did unlawfully, and with malice aforethought kill Richard Brune and Cheryl Moore by, towit: On January 2, 1977, at a location on or near Interstate 10 in Mobile County, Alabama, was shot with a gun, [sic] in violation of Act Number 213, Section 2, Sub-Section J (Act # 213, § 2 (j)), Acts of Alabama, Regular Session, 1975, against the peace and dignity of the State of Alabama."
Petitioner's contention that count one charged no more than first degree murder of two persons is not well taken. The capital murder statute does require that the victim be killed by "one or a series of acts," an allegation omitted from count one of the indictment. The omission did not, however, leave the defendant unaware of the nature and cause of the charge against him in light of the reference to the death penalty statute by act number in each count of the indictment.
Count three alleged, in pertinent part, that Tomlin:
 ". . . did unlawfully, intentionally, and with malice aforethought kill Richard Brune and Cheryl Moore, by shooting them with a gun, wherein both Richard Brune and Cheryl Moore were intentionally killed by PHILLIP WAYNE TOMLIN by one or a series of acts, in violation of Act Number 213, Section 2, Sub-Section J (Act # 213, § 2 (j)) and Act Number 213, Section 6, Sub-Section H (Act # 213, § 6 (h)), Acts of Alabama, Regular Session, 1975, in that said killings were especially heinous, atrocious or cruel. . . ."
Count three was, if anything, overinclusive. We disagree with petitioner's argument that the State failed to prove that the murders were "especially heinous, atrocious or cruel." The State introduced evidence that Tomlin had planned to kill Ricky Brune for over nine months. He traveled from Texas to Mobile with a "hit man" for the express purpose of carrying out his plan to kill Brune. Tomlin and Daniels apparently gained entry into the back seat of Brune's car, and then shot not only Brune but also his fifteen-year-old companion in the back with a shotgun and a pistol. We are not inclined to rule as a matter of law that the murders were not especially heinous, atrocious or cruel.
 II FAILURE OF THE STATE TO DISCLOSE THE IDENTITY OF WITNESS PRIOR TO TRIAL
About nine months prior to the killings, two officers from the Texas Department of Public Safety, operating undercover, talked with the petitioner at a night club in Houston, Texas, in connection with an investigation of illegal drug trafficking. During the conversation Tomlin allegedly stated that he intended to go to Alabama to "kill someone." Tomlin was subsequently prosecuted in Texas on a drug charge but was not convicted. His case was nolprossed after a mistrial.
The trial court in the instant case ordered the State to submit to the defendant list of the witnesses it intended to call at trial. The list included one of the two Texas police officers. At trial the State called both officers, who testified to their conversation with Tomlin. Petitioner objected to the testimony of the unlisted witness, Officer Hebison. On appeal he argued that, had he known Hebison was going to testify, he would have acquired a transcript of the Texas proceedings in order to facilitate his cross-examination of Hebison.
We fail to see how inclusion of both officers' names would have provided any better notice of the need to obtain the Texas transcript than was afforded by the inclusion of one of their names. Both testified to substantially the same facts. If, indeed, there was any error, it was harmless. A.R.A.P. 45. *Page 64 
 III WHETHER A MOTION TO EXCLUDE SHOULD HAVE BEEN GRANTED AS TO COUNT TWO
Count two charged that the killings were done for pecuniary or other valuable consideration or pursuant to a contract or for hire, in violation of § 13-11-2 (a)(7), Code of Alabama (1975) (repealed). The trial court submitted all three counts to the jury, which returned a verdict of guilty "as charged in the indictment." The jury, therefore, convicted Tomlin of every crime included in the indictment, including murder pursuant to a contract or for hire.
The Court of Criminal Appeals affirmed, based on the evidence that Tomlin was accompanied by Daniels, whom he introduced as a "hit man." Even though Tomlin did not himself act pursuant to a contract or for hire, there was sufficient evidence to convict him because under Alabama's accomplice statute all persons concerned in the commission of the crime must be indicted, tried, and punished as principals. Section 13-9-1, Code of Alabama (1975) (repealed).
The petitioner argued that the court's findings in its sentencing order could not be reconciled with the jury verdict. The court's sentencing order states, inter alia, that "the capital felony was not committed for pecuniary gain" and that "Mr. Tomlin was not an accomplice . . . but was in fact a principal who was present and assisted in the commission of the double homicide."
The finding that Tomlin did not act for pecuniary gain was not at odds with the theory that he hired Daniels as his "hit man" and was, therefore, liable as Daniels's accomplice. The court's finding that Tomlin was not an accomplice but was present and assisted in the killings is incongruous on its face. If Tomlin assisted Daniels in the killings he was, by definition, Daniels's accomplice. The finding in question was made with reference to § 13-11-7 (4), Code of Alabama (1975) (repealed), which provides that it is a mitigating circumstance to be considered in sentencing the defendant if the defendant was an accomplice whose participation was relatively minor. The court was apparently attempting to state that Tomlin was not an accomplice whose participation was relatively minor, but simply omitted that crucial language. At any rate, the issue is moot. The Court of Criminal Appeals ruled that the finding in question was "defective" and ordered that the cause be remanded for a correction of the sentencing order. Objections based on the content of the sentencing order should be raised after remandment.
 IV SUFFICIENCY OF THE JURY CHARGE
On appeal petitioner argued, for the first time, that the elements of premeditation, unlawfulness, and malice aforethought should have been included in the charge. Failure to include these elements, he argued, constituted plain error which affected his substantial rights. A.R.A.P. 39 (k).
We disagree. The oral charge must be judged within the context of the facts in dispute. Van Antwerp v. State, 358 So.2d 782, 786
(Ala.Cr.App.), cert. denied, 358 So.2d 791 (Ala. 1978). There was no dispute as to whether the killings were premeditated, unlawful, and done with malice aforethought. Tomlin either carried out the brutal, execution-style killings after months of planning or he was in Texas at the time of the killings and had no knowledge of them. There was no evidence to suggest accident, passion, justification, or provocation.
 V SUFFICIENCY OF THE VERDICT FORM
Although he did not object to the verdict form which was offered to the jury, petitioner now argues that there was a fatal variance between the indictment and the jury verdict, which read: *Page 65 
 "We, the jury, find the defendant guilty of murder as charged in the indictment and fix the punishment at death."
The same argument with regard to a verdict form which was virtually identical to the one in the case at bar was rejected inJohnson v. State, 399 So.2d 859, 865 (Ala.Cr.App.), affirmed in part, reversed in part on other grounds, 399 So.2d 873 (Ala. 1979). That case is controlling.
 VI THE COURT'S INSTRUCTIONS REGARDING A MISTRIAL
After the jurors had deliberated some four hours, they returned with several questions, the second of which was:
"What happens if there is a hung jury?"
The Court replied:
 "Well, I'm going to answer your first question first — I mean your second question first. Under our legal system in the event that you people cannot reach a unanimous verdict it would be incumbent upon this Court to declare a mistrial, which in effect means that approximately six to eight to twelve weeks from now another jury would be empaneled, another jury would hear the exact same charge that you heard and then it would be submitted to that jury. Okay?"
Although he did not object at trial, the petitioner argued on appeal that it was plain error for the court not to instruct the jury of the possibility that Tomlin could have been reindicted and tried for noncapital murder.
It is true that the option mentioned by the petitioner would have been open to the State in the event of a mistrial. For that matter, the State could have dropped all charges against the defendant. We fail to see how the omission could have prejudiced the defendant. Looking at the instruction from Tomlin's vantage point when the question was asked, an instruction which fully set out all alternatives open to the State, including the State's option to nolpros the case, would have been as likely to harm as to benefit the defendant. Petitioner cannot, after waiving his objection at trial, bring the matter up on appeal.
The decision of the Court of Criminal Appeals is hereby affirmed.
APPLICATION GRANTED; OPINION OF AUGUST 28, 1981 WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., not sitting.
[EDITORS' NOTE: PAGES 67-70 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 880