**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0505n.06

**No. 10-3179**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jul 20, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ZACHARY HARROP, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner - Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| MICHAEL SHEETS, Warden | ) | |
| | ) | |
| Respondent - Appellee. | ) | |
| _____ | ) | |
| | ) | |

**Before: GIBBONS and WHITE, Circuit Judges; and OLIVER, Chief District Judge.***

**HELENE N. WHITE, Circuit Judge.** Petitioner Zachary Harrop was convicted of murder

and tampering with evidence in Ohio state court. He is now serving a sentence of fifteen years to

life on the murder conviction. Harrop argues that he is entitled to habeas relief on the basis that his

trial counsel provided ineffective assistance of counsel by failing to request a jury instruction on

voluntary manslaughter. We affirm the district court's determination that Harrop's counsel was not

unconstitutionally ineffective and that the state court did not unreasonably apply *Strickland v.*

*Washington*, 466 U.S. 668 (1984).

---

*The Honorable Solomon Oliver, Jr., Chief Judge of the United States District Court for the
Northern District of Ohio, sitting by designation.

**I**

Harrop was convicted of felony murder, Ohio Rev. Code § 2903.02(B), and tampering with evidence, *id.* § 2921.12(A)(1), following a jury trial in Ohio state court in November 2005. The Court of Appeals for the Twelfth Appellate District of Ohio upheld the convictions on direct appeal, and the Supreme Court of Ohio subsequently denied leave to appeal and dismissed the appeal as not raising a substantial constitutional question. Harrop filed a petition for a writ of habeas corpus in the Southern District of Ohio raising an ineffective-assistance-of-counsel claim. A magistrate judge recommended that Harrop's petition be dismissed for lack of merit, and the district court adopted the magistrate judge's report and recommendation and dismissed the petition.

The state court of appeals summarized the factual background of this case:

> []On April 8, 2005, appellant was indicted on one count each of murder in violation of R.C. 2903.02(B), felonious assault in violation of R.C. 2903.11(A)(1), and tampering with evidence in violation of R.C. 2921.12(A)(1). The charges stemmed from an incident that took place in the early morning hours of April 1, 2005 at the residence of Joseph Heimann. Present at the residence that morning were appellant, Heimann, Roger Byrd, and a friend of Heimann[, Justin Tyree].

> []Byrd was asleep in the living room when he suddenly stood up and started urinating on the floor in front of appellant and Heimann. Appellant struck Byrd, grabbed him, and put him outside. After Byrd unsuccessfully tried to get back in through the front door, he entered the house through the back door. Once again, appellant grabbed Byrd and put him outside. In the process of putting Byrd outside twice and preventing him from re-entering the house, appellant hit him in the face with his fist several times and kicked him several times. After appellant threw Byrd out the second time, appellant hit him again. Byrd never got up. Appellant then dragged Byrd to the neighbor's yard next door. During the altercation, Byrd, who looked like he was asleep, never swung back, kicked back, slapped, or pushed appellant. During the altercation and in the process of being dragged out, Byrd lost his shoes, socks, pants, and underwear. He was discovered with only a shirt on by construction workers at about 9 a.m. He later perished from his injuries.

[]In April 2006, a jury found appellant guilty of murder and tampering with evidence. He was sentenced to 15 years to life in prison on the murder charge and to a consecutive five-year prison term on the tampering with evidence charge.[1]

*State v. Harrop*, No. CA2005-12-036, 2006 WL 3350647, at *1 (Ohio Ct. App. Nov. 20, 2006).

Trial testimony provided the following background: Byrd had been at a local bar during the evening in question. As closing time approached, patrons were invited to a party at Heimann's house. Although Byrd was not acquainted with Heimann, he went to Heimann's house after the bar closed at 2:30 AM. According to testimony, Byrd was "pretty intoxicated." Byrd remained at the house after the party wound down and fell asleep in the front room. Justin Tyree, a friend of Heimann, also fell asleep in the front room. Tyree testified that someone's yelling, "this mother f----- pissed on the floor" woke him up during the night. Heimann testified that he had walked into the front room and seen Byrd stand up and start urinating on the floor, including almost urinating on Tyree who was sleeping on cushions on the floor. Harrop was also in the front room watching Byrd urinate on the floor. After yelling at Byrd, Harrop grabbed Byrd's arm and started dragging him toward the front door while hitting him with a closed fist and kicking him in the face and elsewhere. Heimann testified that Byrd "kind of balled his fist up" and that Harrop "kind of defended himself," but otherwise there is no evidence that Byrd attempted to fight back against Harrop. Tyree testified that Byrd appeared to be asleep during much of the assault and that he did

---

[1]The state court of appeals reversed only the trial court's imposition of consecutive sentences and remanded for resentencing. *Harrop*, 2006 WL 3350647, at *3-4. The court rejected Harrop's ineffective-assistance-of-counsel claim. *Id.* at 2-3.

3

not strike back. Harrop forced Byrd out the front door. When Byrd tried to reenter through the front door, Harrop hit him in the face.

Byrd quickly reentered the house through the back door. Heimann testified that he told Byrd "I don't want you in my house . . . you need to get out and you know [I] kind of pushed him toward the back door and he was trying to fight and plead to stay and I said man, I don't want you in my house you need to leave and opened up the back door and [Harrop] hit him and he fell out the back door and hit his head on the concrete." Harrop dragged Byrd to a neighboring property, with Heimann's assistance, and left him there. Byrd died as a result of head injuries sustained during the encounter with Harrop.

The defense presented no witnesses. The court prepared to instruct the jury on the three crimes charged in the indictment, felonious assault, murder,[2] and tampering with evidence. The defense requested jury instructions on the lesser-included offenses of misdemeanor assault and involuntary manslaughter, which the prosecution opposed. The court rejected the defense's request and gave instructions only on felonious assault, murder, and tampering with evidence. The defense did not request jury instructions on voluntary manslaughter.

The jury returned a verdict of guilty on the murder and tampering with evidence charges. On direct appeal, Harrop (represented by new counsel) argued that his trial counsel rendered ineffective

---

[2]Harrop was charged and convicted under the felony-murder provision of the Ohio murder statute, which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ." Ohio Rev. Code § 2903.02(B). The predicate violent felony was felonious assault.

assistance of counsel by failing to seek jury instructions on voluntary manslaughter. The state court of appeals rejected that claim, and the state supreme court denied leave to appeal and dismissed the appeal. Harrop raised the same ineffective-assistance-of-counsel claim in his habeas petition to the district court and renews it on appeal to this Court.

## II

### A. STANDARD OF REVIEW

We review the district court's decision to grant or deny the writ of habeas corpus de novo. *Linscott v. Rose*, 436 F.3d 587, 590 (6th Cir. 2006). We also review the district court's factual findings de novo because the court did not hold its own evidentiary hearing and reviewed Harrop's habeas petition upon the record of the state-court proceedings only. *Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001).

We review deferentially state-court decisions affirming the petitioner's conviction. *Maldonado v. Wilson*, 416 F.3d 470, 474 (6th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), state-court determinations of fact "shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A habeas petitioner is not entitled to relief unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts." *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case." *Id.* (citing *Williams*, 529 U.S. at 412-13).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. Applicable Legal Standards

Harrop argues that his trial counsel provided ineffective assistance of counsel by failing to request a jury instruction on voluntary manslaughter and that the state court of appeals unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in denying the ineffectiveness claim. Under *Strickland*, Harrop must show that his counsel's performance was deficient and that the error was prejudicial. On the deficient-performance prong, the "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This assessment is "highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). On the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

To decide whether Harrop's trial counsel rendered ineffective assistance of counsel by not requesting a voluntary-manslaughter instruction, we must look to Ohio law. Voluntary manslaughter is defined by Ohio statute as follows:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . . .

Ohio Rev. Code § 2903.03(A). Voluntary manslaughter is an offense of an inferior degree to murder (but not technically a lesser-included offense). *State v. Braden*, 785 N.E.2d 439, 454 (Ohio 2003). "Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine 'whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.'" *Id.* at 454-55 (quoting *State v. Shane*, 590 N.E.2d 272, 273 (Ohio 1992)). "The initial inquiry requires an objective standard: 'For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *Id.* at 455 (quoting *Shane*, 590 N.E.2d at 276). If the provocation is objectively sufficient, then "the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." *Shane*, 590 N.E.2d at 276. When evaluating whether a voluntary manslaughter instruction is warranted, the trial judge "evaluate[s] the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." *Id.* at 278. The voluntary-manslaughter

7

instruction "is not warranted every time 'some evidence' is presented to support [it]. Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" *State v. Trimble*, 911 N.E.2d 242, 273 (Ohio 2009) (quoting *Shane*, 590 N.E.2d at 275).

The state court of appeals determined that Byrd's actions were objectively insufficient "to arouse the passions of an ordinary person beyond control." *Harrop*, 2006 WL 3350647, at *3. "Considering that Byrd looked like he was asleep during the altercation, was apparently intoxicated, never took any offensive action against appellant while being hit and kicked by appellant, and never verbally threatened appellant," the court wrote, "we find that the record lacks sufficient evidence of serious provocation." *Id.* The court then concluded:

> Because there was no evidence that appellant's offenses were influenced by a sudden passion or a sudden fit of rage brought on by serious provocation from the victim, jury instructions on voluntary manslaughter and aggravated assault were not warranted under the facts of this case. It follows, then, that to request such instructions would have been futile and inappropriate. An attorney is not ineffective for failing to make futile requests, see *State v. Kouzelos* (Apr. 16, 1992), Cuyahoga App. No. 62568, or for failing to make a request for a jury instruction which would have been denied. See *State v. Kenney* (May 10, 2000), Holmes App. No. CA93-480A. Appellant's trial counsel provided reasonable representation and did not commit any error when he did not request jury instructions on voluntary manslaughter and aggravated assault.

*Id.* Assessing this conclusion with the requisite deference due to a state court in the habeas context, we cannot conclude that the Ohio appellate court unreasonably applied Supreme Court precedent in deciding the ineffective-assistance-of-counsel claim.

2. Deficient Performance

Where a jury instruction on an inferior offense is not warranted by the evidence, counsel's failure to request such an instruction does not constitute ineffective assistance. *See Goodwin v. Johnson*, 632 F.3d 301, 317 (6th Cir. 2011); *cf. Hopper v. Evans*, 456 U.S. 605, 611 (1982) ("[D]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction."). The question, then, is whether the evidence would have warranted the giving of the voluntary-manslaughter instruction.

Viewing the evidence in the light most favorable to Harrop, the actions of Byrd that potentially constituted provocation consisted of: 1) urinating on the floor of Heimann's house in the presence of Harrop; 2) balling up his fist as if he was possibly going to strike Harrop; 3) attempting to re-enter the house through the front door after being forcefully ejected by Harrop; and 4) re-entering the house through the back door, failing to leave when told to do so, and "trying to fight and plead to stay," Also relevant, however, is that Byrd never struck back at Harrop and that Tyree testified that Byrd appeared to be asleep and unresponsive during much of the initial assault by Harrop. Ohio cases suggest that these factors are insufficient to satisfy the objective element needed to justify a voluntary-manslaughter instruction — provocation "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane*, 590 N.E.2d at 276. The Ohio Supreme Court has noted that "assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery are some of the classic . . . situations" that constitute objectively sufficient provocation to warrant a voluntary-manslaughter instruction. *Id.* at 277. Further, a number of cases from the Court of Appeals for the Twelfth District and from other Ohio courts hold

9

that conduct comparably or more serious than Byrd's fails to satisfy the objective element of the voluntary-manslaughter standard. *See, e.g.*, *State v. Deem*, 533 N.E.2d 294, 300 (Ohio 1988); *State v. Rice*, No. CA2003–01–015, 2004 WL 292083 (Ohio Ct. App. Feb. 17, 2004); *State v. Bealer*, No. CA2002-03-056, 2003 WL 1956089, at *5 (Ohio Ct. App. Apr. 28, 2003); *State v. Patterson*, No. CA2001–01–011, 2002 WL 745282, at *11 (Ohio Ct. App. Apr. 29, 2002); *State v. Rivera-Carillo*, No. CA2001–03–054, 2002 WL 371950, at *11 (Ohio Ct. App. Mar. 11, 2002). Harrop identifies several cases where Ohio courts have found adequate provocation based on situations "comparable in degree" to Byrd's provocations here, but those cases provide thin support. Harrop relies in particular on *State v. Scott*, No. CA91-08-015, 1992 WL 139368, at *1, *3 (Ohio Ct. App. June 22, 1992), where the court upheld the voluntary-manslaughter conviction of a defendant who shot the victim immediately after the victim had smashed the glass "T-top" on the roof of the defendant's car while the defendant and his fiancee were inside. Unlike Byrd's actions, the victim's actions in *Scott* placed the defendant in reasonable fear for his safety and therefore constituted objectively sufficient provocation.

Ohio cases thus show that objectively sufficient provocation was lacking in situations where the victim's actions were comparably or more provocative than Byrd's. But even to the extent there is some degree of uncertainty in how to apply Ohio's voluntary-manslaughter standard, we defer to the state court's interpretation of its own law. *Cf. Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision

concerning matters of state law."). We will not disturb the state court's determination that Byrd's actions were insufficient to constitute adequate provocation. We need not consider whether Harrop satisfied the subjective prong of the voluntary-manslaughter standard.

Finally, even if there were a colorable claim that a voluntary-manslaughter instruction was appropriate, there is no indication that Harrop's trial counsel acted outside of the range of permissible trial strategies by opting not to request it. *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). In light of Harrop's trial counsel's request for jury instructions on the lesser included offenses of misdemeanor assault and involuntary manslaughter, it is clear that counsel was aware of his duty to request instructions on inferior offenses where appropriate. He could have decided not to request the voluntary-manslaughter instruction because he thought it would be futile, or because it would have diluted the other arguments he was advancing to the jury. *See State v. Voss*, No. CA2006-11-132, 2008 WL 2955390, at *6 (Ohio Ct. App. Aug. 4, 2008) (where defense counsel requested instruction on *another* lesser included offense, "counsel may have believed he stood a better chance of winning an acquittal for [defendant] by not giving the jurors an instruction on voluntary manslaughter, thereby requiring them to carefully consider whether the state presented sufficient proof to establish that [defendant] acted with prior calculation and design"). Harrop has provided insufficient indication that his counsel was constitutionally deficient. We hold that the state court reasonably applied the deficiency prong of the ineffective-assistance-of-counsel standard set out in *Strickland*.

3. Prejudice

Even if Harrop's counsel's performance were deficient, Harrop has not shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As described above, the argument that the provocation was objectively sufficient is weak, and so Harrop has a heavy burden to show that he would not have been convicted of murder had the instruction been requested and granted. *See Higgs v. Haeberlin*, 899 F.2d 1221, 1990 WL 40077, at *2 (6th Cir. 1990) (unpublished table opinion) ("Because an instruction on a lesser included offense was not warranted by the evidence, petitioner was not prejudiced by the failure of his trial counsel to make such a request.") Further, the prosecution's task of presenting evidence to support a conviction for felony murder was relatively simple. To obtain a conviction for felony murder, the prosecution had to prove that Harrop "cause[d] the death of another as a proximate result of [Harrop's] committing or attempting to commit an offense of violence that is a felony of the first or second degree." Ohio Rev. Code § 2903.02(B). The predicate felony was felonious assault, which is committed when a person knowingly "cause[s] serious physical harm to another." *Id.* § 2903.11(A)(1). Thus, all the prosecution had to prove was that Harrop knowingly caused serious physical harm to Byrd and that as a result Byrd died. Testimony from police relating Harrop's confession to repeatedly striking Byrd, from eye witnesses describing the event, from people to whom Harrop had made incriminating statements, and from a forensic pathologist provided more than enough evidence to conclude that the prosecution met its burden. Although it is *possible* that the jury might have convicted on

12

voluntary manslaughter if given the option, Harrop has not shown that there was a "reasonable probability" that they would have done so.

## III

Because the state court of appeals did not unreasonably apply Supreme Court precedent as set out in *Strickland v. Washington*, 466 U.S. 668 (1984), we **AFFIRM** the district court's denial of Harrop's petition for habeas corpus relief.