PER CURIAM.
Ervin J. Lewis, appellant, asserts that the trial court committed per se reversible error when it refused to instruct the jury on the necessarily lesser-included offense of simple battery when the underlying charge was battery within a detention facility. § 784.082(3), Fla. Stat. (2014). We are constrained to reverse pursuant to the Florida Supreme Court’s rulings in State v. Wimberly, 498 So.2d 929 (Fla. 1986), and State v. Abreau, 363 So.2d 1063 (Fla. 1978),[1] which held that the failure to instruct on the next immediate necessarily lesser-included offense is per se reversible error, even though no reasonable jury could have determined that the battery in this case did not take place in a detention facility. We believe the rationale of Wim-berly and Abreau, when applied to the facts of this case, is irreconcilable with the sound reasoning expressed in Galindez v. State, 955 So.2d 517 (Fla. 2007), and Hurst v. State, 202 So.3d 40 (Fla. 2016). In both of those cases, the supreme court held that even though the trial courts’ errors reached constitutional proportions, because there was no reasonable possibility that the errors contributed to the verdict, they could be reviewed under the harmless error standard of review.
Forcing a retrial in this and similar cases, where the undisputed evidence establishes that the greater crime was committed, is a waste of judicial resources, is inconsistent with Florida Supreme Court precedent where the harmless error doctrine has been applied, and cannot be justified on the basis of the jury pardon doctrine.
We, therefore, also certify a question of great public importance concerning whether failure to instruct a jury on the next immediate necessarily lesser-included offense may constitute harmless error where no reasonable jury could have returned a verdict for the lesser-included offense.
I. Facts
In this case, appellant was charged with battery upon a jail visitor or other detainee under sections 784.082 and 784.03, Florida Statutes (2014). Section 784.082(3) results in reclassification of the battery from a misdemeanor to a third-degree felony because of its occurrence within a jail or detention facility.
The evidence is uncontroverted that appellant and the victim were detainees at the time of the battery. In fact, they were cellmates. Therefore, custody status was not an element of contemplation for the jury. The only issue for jury deliberation was whether a battery occurred. Accordingly, appellant’s conviction reflects a specific finding by the jury of satisfaction of the battery elements. Appellant’s request for a new trial, citing Wimberly, requires a complete disregard of the following: 1) the undisputed fact that appellant was an inmate; 2) the undisputed fact that the victim, appellant’s cellmate, was also an inmate; and 3) the fact that the jury was limited in its deliberation to determining whether appellant committed simple bat *281 tery, as the fact that appellant was an inmate was uncontested. Appellant desires and Wimberly supports an award of a new trial—essentially a second at-bat with the same pitcher, but a different fielding team. This scenario defies logic and irrationally places form over substance.
II. Inconsistency with Supreme Court of Florida’s Precedent
As previously mentioned, the rationale for not applying the harmless error analysis under these circumstances specifically conflicts with the holdings in Galindez and Hurst.
In Galindez, the Florida Supreme Court applied a harmless error analysis to affirm a sentence despite the jury not specifically making a determination of penetration in a lewd assault on a minor charge, explaining that in light of clear and uncontested record evidence, “no reasonable jury would have returned a verdict finding there was no penetration.” Galindez, 955 So.2d at 524. Although the error in Galindez was an Apprendi/Blakely Sixth Amendment violation, the Galindez court applied a harmless error analysis by relying on a case similar to the one at hand that held, “[wjhere the defendant alleged that error regarding a lesser included offense deprived him of a jury pardon, ‘[gjiven the evidence adduced at trial, the error also was harmless, since it is inconceivable that any rational jury could have returned a verdict finding that there was no firearm involved in the commission of the charged offenses.’ ” Galindez, 955 So.2d at 524 (quoting Delvalle v. State, 653 So.2d 1078, 1079 (Fla. 5th DCA 1995) (citing State v. DiGuilio, 491 So.2d 1129 (Fla. 1986))). Following Galindez, this court has twice requested clarification from the Florida Supreme Court on its implied recession from a strict per se reversible error application in this context of the failure to instruct on a necessarily lesser-included offense. See Lindsay v. State, 1 So.3d 270 (Fla. 1st DCA 2009); Riley v. State, 25 So.3d 1 (Fla. 1st DCA 2008). However, review was denied.
Nevertheless, citing Galindez, the Florida Supreme Court recently extended harmless error analysis to the review of death penalty cases. See Hurst v. State, 202 So.3d 40 (Fla. 2016). On remand from the United States Supreme Court with specific instructions to review the violation of Hurst’s Sixth Amendment rights for harmless error, the Florida Supreme Court relied upon Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), in noting “that failure to submit a sentencing factor to the jury in violation of Apprendi, Blakely, and the Sixth Amendment was not structural error that would always result in reversal.” Hurst, 202 So.3d at 67.
Setting out the harmless error analysis pursuant to Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), the Florida Supreme Court instructed in Hurst:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.
Hurst, 202 So.3d at 68 (quoting DiGuilio, 491 So.2d at 1138).
We acknowledge that the Florida Supreme Court has on numerous occasions upheld the per se reversible error doctrine in this type of case, in which there was a failure to instruct on the next necessarily lesser-included offense, but judicial inefficiency continues as a result. See Wilcott v. State, 509 So.2d 261, 262 (Fla. 1987) (reversing conviction for unlawfully introduc *282 ing or possessing contraband upon grounds of a correctional center because trial court refused to provide a jury instruction on simple possession of less than twenty grams of cannabis, even though the only evidence established that the possession did, in fact, occur in the prison and the defendant was an inmate); Wimberly, 498 So.2d 929 (reversing conviction for battery of a law enforcement officer even though uncontroverted evidence at trial established that the defendant was incarcerated at the time of the altercation and that he struck two law enforcement officers). District courts have been constrained to follow supreme court precedent in this area.[2]
The more recent supreme court cases like Galindez and Hurst indicate that the supreme court has recognized the judicial inefficiency created by certain rules of per se reversible error such as the rule in the current case requiring reversal where the jury was not instructed on a necessarily lesser-included offense. Requiring unnecessary retrials under these circumstances strains overburdened judicial resources with little justification. As such, we certify a question of great public importance to the Florida Supreme Court.
III. Not Justified by Jury Pardon Doctrine
As previously stated, the per se reversible error doctrine has been justified on the basis of a possible exercise of a jury pardon. There are a number of reasons that application of this doctrine in this case is unjustified.
First, the United States Constitution does not require a lesser-included offense instruction in non-capital cases. See Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001). In fact, justifying the imposition of a per se reversible error rule based on the theory of jury pardon is inconsistent *283 with federal law that states even in capital cases, lesser-included offenses that are not supported by the evidence do not have to be given. Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), In Hopper, a capital case, the United States Supreme Court specifically stated:
[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. ... The federal rule is that a lesser included offense instruction should be given “if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.”
Id. at 611-12, 102 S.Ct. 2049 (quoting Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)).
Requiring reversal for failing to give a jury instruction on a necessarily lesser-included offense where no rational jury could have found that the lesser-included offense was applicable (jury pardon theory) is, thus, inconsistent with federal law.
Second, in the wake of Galindez and Hurst, the longstanding conflict of per se reversible error application to necessarily lesser-included offenses is accentuated. The compelling dissenting opinions of Justice Shaw in Wimberly, 498 So.2d at 932, and Wilcott, 509 So.2d at 263; the dissenting opinion of Justice Canady in Haygood v. State, 109 So.3d 735, 746 (Fla. 2013); the concurring, in part, and dissenting, in part, opinion of Justice Polston in Johnson v. State, 53 So.3d 1003, 1013-16 (Fla. 2010); and the concurring opinion in Riley v. State, 25 So.3d 1, 4-6 (Fla. 1st DCA 2008), illustrate the practical calamities resulting from the directives of Wimberly, which “upholds,” often at the exclusion of logic and reason, the jury pardon doctrine. These dissenting and concurring opinions have been embraced by multiple districts that apply, often begrudgingly, the precedent of Wimberly. See, e.g., Franklin v. State, 877 So.2d. 19, 21 (Fla. 4th DCA 2004) (Stone, J., dissenting); Hayes v. State, 564 So.2d 161 (Fla. 2d DCA 1990); Jess v. State, 523 So.2d 1268 (Fla. 5th DCA 1988).
The analyses of Justices Shaw, Canady, and Polston have been further enhanced by the adoption of standardized jury instructions, the purpose of which is to reduce the number of lesser-included offenses. There can be no reconciliation among the jury pardon doctrine, present-day standard jury instructions, and the required oath of jurors. A juror must swear and affirm to “well and truly try the issues between the State of Florida and the defendant and render a true verdict according to the .law and the evidence.” Fla. R. Crim. P. 3.360. Post Wimberly, the jury pardon doctrine has been expanded and stretched to create, on behalf of the defendant, a fundamental right—essentially the availability of a jury nullification. Accordingly, in' navigating their duty to follow the law and to properly consider the evidence, while retaining the option of jury nullification, present day jurors in Florida shoulder an immediate ethical burden and confront obvious conflicts of interest.
Finally, the requirement of per se reversal in this particular case is unjustified because the jury in this case was not prevented from exercising a jury pardon. The jury could have pardoned appellant by returning a verdict of not guilty. The jury simply chose not to do so.
Neither the United States Constitution, the Florida Constitution, the Florida Statutes, nor the Florida Rules of Criminal Procedure support the jury pardon doctrine. Accordingly, the perceived fundamental right to a jury pardon is one of judicial creation. This deontic debate *284 over the jury pardon stems from the preservation of an archaic doctrine (once purposeful and necessary) in a modern legal forum, the result of which is jury conflict of interest, jury instructions laced -with mutually exclusive theory, and subsequent and inevitable judicial inefficiency.
For these reasons, we certify the following as a question of great public importance:
BASED ON THE REASONING OF GALINDEZ V. STATE, 955 So.2d 517 (Fla. 2007), AND HURST V. STATE, 202 So.3d 40 (Fla. 2016), MAY A COURT FIND THAT FAILURE TO INSTRUCT THE JURY ON THE NEXT IMMEDIATE NECESSARILY LESSER-INCLUDED OFFENSE CONSTITUTES HARMLESS ERROR WHERE NO REASONABLE JURY COULD HAVE RETURNED A VERDICT FOR THE LESSER OFFENSE?
Galindez and Hurst document an implied recession by the Florida Supreme Court from Wimberly and strict per se reversible error application. If harmless error analysis is jiow applicable in Florida to death penalty and sentencing, there exists no rational basis for failing to extend such analysis to necessarily lesser-ineluded offense review. A continuation of placing form over substance on the platform of “jury pardon” preservation ignores an evolving procedural rule structure, inherent conflicts of interest, and the promotion and tolerance of judicial wastefulness.
Regardless, because we are constrained to do so by Wimberly and Abreau, we reverse and remand for a new trial.
WOLF and M.K. THOMAS, JJ., CONCUR; BILBREY, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.

. While we question the wisdom of a per se reversible error rule in a case like this, where it is undisputed that the crime took place in a detention facility, we are bound to follow supreme court precedent.

. See, e.g., Riley v. State, 25 So.3d 1 (Fla. 1st DCA 2008) (granting a new trial after conviction of capital sexual battery due to failure of trial judge to provide a jury instruction on simple battery even though no reasonable jury could have found the defendant guilty of simple battery); King v. State, 911 So.2d 857 (Fla. 1st DCA 2005) (granting a new trial for defendant after jury conviction for battery on a law enforcement officer where the trial judge denied request for simple battery instruction after defendant admitted he knew the victim was a law enforcement officer); Brown v. State, 608 So.2d 114 (Fla. 1st DCA 1992) (reversing conviction for battery on a law enforcement officer and granting a new trial due to trial judge failing to give jury instruction on simple battery despite defendant admitting the officer-victims were in full uniform and arrived in police cruisers.); Hayes v. State, 564 So.2d 161 (Fla. 2nd DCA 1990) (granting new trial following jury conviction for attempted first-degree felony-murder, armed robbery, and unarmed robbery on basis that trial court erred in refusing to give jury instruction on necessarily lesser-included offenses of attempted second-degree murder and attempted manslaughter despite the recognition that due to first-degree felony-murder charge that neither of the manslaughter exemptions, justifiable homicide, or excusable homicide theories could possibly apply); Jess v. State, 523 So.2d 1268 (Fla. 5th DCA 1988) (reversing conviction for possession of cannabis upon grounds of a correctional facility due to trial judge’s refusal to give jury instruction on simple possession, not within a correctional institution, even though undisputed evidence confirmed possession occurred while defendant was incarcerated); Dillard v. State, 544 So.2d 329 (Fla. 5th DCA 1989) (granting a new trial due to lack of jury instruction on simple battery as a necessarily lesser-included offense of battery in a county jail or detention facility following a fight with another detainee even though uncontroverted evidence existed that the fight occurred within the county jail while locked inside a holding cell); Cooper v. State, 512 So.2d 1071 (Fla. 1st DCA 1987) (requiring a new trial for failure to give jury instruction on simple possession along with instruction for possession of contraband articles in a county detention facility, even though location of possession was not in dispute).