# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 13, 2011

No. 10-70029

Lyle W. Cayce
Clerk

HENRY CURTIS JACKSON, JR.,

Petitioner - Appellant

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:03-cv-00461-WAP

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Henry Curtis Jackson, Jr. (Jackson), was convicted in Mississippi of capital murder for the 1990 murders of four of his nieces and nephews. He filed a petition for habeas relief in the United States District Court for the Northern District of Mississippi. The district court denied habeas relief on all grounds raised, but granted a Certificate of Appealability (COA) on whether Jackson was improperly denied his right to be present at all stages of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-70029

trial.  Jackson subsequently filed a motion to expand the COA with this court.
We AFFIRM the district court's denial of habeas relief and DENY Jackson's
request for an expanded COA.

## I.  BACKGROUND

### A.     Facts

On November 1, 1990, Martha Jackson and four of her grandchildren left
her home to attend church services.  Her daughter, Regina Jackson, stayed home
with her daughters Dominique, age five, and Shunterica, age two.  Four of
Regina's nieces and nephews also stayed home from church services—eleven-
year-old Sarah, three-year-old Antonio, two-year-old Andrew, and one-year-old
Andrea.  At some point that evening, Jackson, Regina's brother, knocked on the
door.  Regina let Jackson into the house.  He asked her to give him a cigarette
and to mix him a remedy for an upset stomach.

Shortly thereafter, Jackson asked Regina why the telephone was not
working, and she discovered that the telephone line was dead.  Regina and
Antonio left to report the telephone problem at a neighbor's house, but Sarah
called them back at Jackson's request.  When Regina returned to the home,
Jackson asked her if any of the children could talk.  She told him that they could,
and he told her to take them into one of the bedrooms, which she did.

After Jackson asked Regina what she did with the money from her pay
check, Regina stated at trial that Jackson grabbed her from behind and told her
that "he wanted twenty dollars for some ass."  When Regina told him that she
did not have the money, he stabbed her with a knife.  Hearing Regina's calls for
help, Sarah jumped onto Jackson's back.  Regina testified at trial that she began
pleading with Jackson not to kill them as all three struggled, and that Jackson
told her "I love you but I have got to kill you."

By all accounts, Jackson was at the home that evening in order to get
money from a safe that his mother kept in her closet.  Regina testified at trial

2

that Sarah told him to get the safe and leave and Jackson replied that "he came to kill us that Thursday and didn't kill us and he came to kill us that Saturday and he didn't kill us and he said he was going to kill all of us tonight." Jackson took Regina and Sarah into one of the bedrooms in order to get the combination to the safe, and he began stabbing Sarah in the neck. He then took them into another bedroom and began to tie them up when Regina began striking him with some iron rods that were in the bedroom. She stopped when Jackson picked up one of the children, Andrea, and began to use her as a shield.

Regina let Jackson tie her up, and he stabbed her again in the neck. Jackson also stabbed Antonio and Shunterica. Regina stated that she began to go in and out of consciousness, but she remembered hearing Jackson dragging the safe down the hallway. The noise woke Dominique, who began calling for Regina. Regina testified that Jackson called Dominique to him, told her that he loved her, stabbed her, and tossed her body to the floor. Jackson returned to Regina, stabbing her in the neck and twisting the knife, at which point she pretended to be dead until she heard him leave.

Members of the Leflore County Sheriff's Department responded to Martha Jackson's home, where they discovered Regina and the children. Dominique, Shunterica, Antonio, and Andrew were pronounced dead at the scene. Andrea, Sarah, and Regina survived, but required extensive surgery to repair the damage from their stab wounds.

After fleeing the scene, on November 5, 1990, Jackson turned himself in at the West Point, Mississippi Police Department and was placed under arrest. At that time, Jackson was read his rights, executed a waiver of rights, and gave a statement. Later, Jackson gave an audiotaped statement concerning the events that took place at Martha Jackson's home. In his statement, which was admitted at trial, Jackson said that he went to his mother's house to get the safe, and that he knew his mother would be at church services at the time. He said

No. 10-70029

that he cut the telephone lines with a knife that he brought with him and that he unsuccessfully attempted to remove the safe from the house after he stabbed Regina and the children.  He fled and ran to his car, which was parked a short distance from the house.

### B.    Procedural History

On March 12, 1991, Jackson was indicted by the Circuit Court of Leflore County, Mississippi on four counts of capital murder while engaged in the commission of the crime of felonious child abuse, two counts of aggravated assault, and one count of armed robbery.  He was charged with the capital murder of four of his nieces and nephews.  He was charged with the armed robbery and aggravated assault of Regina and the aggravated assault of Sarah. He pled not guilty to all seven counts of the indictment.  Trial was set in Leflore County for August 26, 1991.  During the course of voir dire, defense counsel Johnnie Walls (Walls) sought and obtained a change of venue.  Jackson's trial began on September 9, 1991, in the Copiah County, Mississippi Circuit Court. Jackson was convicted and sentenced to death on all four counts of capital murder.

Jackson then filed for direct appeal to the Mississippi Supreme Court.  On January 18, 1996, the supreme court affirmed the trial court's judgment. *Jackson v. State*, 684 So.2d 1213 (Miss. 1996).  The supreme court denied Jackson's subsequent petition for rehearing on December 5, 1996.  *Jackson v. State*, 691 So.2d 1026 (Miss. 1996).  Jackson then sought relief by filing a petition for writ of certiorari with the United States Supreme Court.  On May 12, 1997, the Court denied certiorari. *Jackson v. Mississippi*, 520 U.S. 1215 (1997).

On May 8, 1998, Jackson filed an application for post-conviction relief with the Mississippi Supreme Court.  On August 7, 2003, the supreme court rendered its opinion denying state post-conviction relief.  *Jackson v. State*, 860 So.2d 653 (Miss. 2003).  A petition for rehearing was filed and later denied on December

No. 10-70029

18, 2003. On the same day, Jackson filed his petition for writ of habeas corpus with the United States District Court for the Northern District of Mississippi. On September 28, 2010, the district court entered a final judgment and memorandum opinion denying habeas corpus relief on all grounds. However, the district court granted a COA on Jackson's claim that he was improperly denied his constitutional right to be present at all stages of trial.

After submitting his briefing on the issue certified by the district court, Jackson filed a motion to expand the COA with this court. He now seeks a COA on three additional grounds. Accordingly, our analysis proceeds in two steps. First, we address the issue certified by the district court. Second, we address Jackson's request for an expanded COA.

## II. ANALYSIS

### A.     Certified Issue

The Due Process Clause and the Confrontation Clause of the Sixth Amendment, as applied to the states via the Fourteenth Amendment, guarantee to a criminal defendant "the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (citation omitted). The right to be present, however, is not absolute and can be waived by the voluntary absence of the defendant. *Taylor v. United States*, 414 U.S. 17, 19–20 (1973); *see also Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). However, the waiver of a constitutional right is not effective unless the right is intentionally and knowingly relinquished. *See Johnson v. Zerbst*, 304 U.S. 464, 465 (1938).

Immediately prior, after, or during testimony that detailed the facts of the murders, Jackson left the courtroom or the courthouse. Specifically, Jackson left: (1) prior to the testimony of the crime scene investigator who narrated video footage of the crime scene; (2) during or immediately after the testimony of the surgeon who treated Sarah and Regina; (3) prior to the testimony of the

5

No. 10-70029

pathologist who examined the bodies of his nieces and nephews; and (4) during the playing of his taped confession.[1] Jackson claims that he was denied his right to be present when he left the courtroom, because his waivers did not comport with *Zerbst*. He claims that the state trial court failed to explain to him the rights he was relinquishing by leaving the courtroom. Jackson further contends that the supreme court ignored the fact that he may not have been able to competently waive his right to be present.

During post-conviction review, the Mississippi Supreme Court held that the claim was procedurally barred because Jackson raised the argument for the first time in his petition for post-conviction relief. Jackson raised the issue again in his petition for federal habeas relief. The district court held that the claim was procedurally barred, but certified for our review the issue of whether the state trial court improperly denied Jackson's right to be present at all stages of trial (hereinafter right to be present claim).

We do not reach the merits of Jackson's right to be present claim because he has not exhausted the claim and has not overcome the procedural bar to our review.

**1.**

Whether a federal habeas petitioner has exhausted his state remedies is

---

[1] During post-conviction review, Jackson contended that there was a fifth absence from trial when the state trial court ordered him from the courtroom. However, he has not made that specific argument to this court. To the extent that he does make this argument, it is clear from the record that the defendant was present at trial. The portion of the transcript that Jackson uses to support his argument that the state trial court removed Jackson from the courtroom is clearly a transcript error. Looking to the record, Eddie Self, Jackson's half-brother, had just concluded his testimony. Self was an inmate at the Mississippi State Penitentiary in Parchman, Mississippi, during the trial. At the conclusion of his testimony, the State excused Self, and trial counsel requested that he be held for possible testimony during the penalty phase of the trial. The trial court's response was, "tell them to take him on back to jail." Immediately afterwards, the court reporter's parenthetical states, "[d]efendant taken back to jail;" however, it is clear from the context of the record that it was Self that was being sent back to jail. Thus, the notation of the court reporter that Jackson was "present in the courtroom" later in the transcript is correct.

No. 10-70029

a question of law that is reviewed de novo. *Scott v. Hubert*, 635 F.3d 659, 667 (5th Cir. 2011). The limits of federal habeas review are codified in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §§ 2241–55. Under AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). If a claim is not exhausted, the claim is procedurally defaulted. *See Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir. 2002).

There are two ways that a habeas claim can be procedurally defaulted. *See Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010). "First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted." *Id.* "Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits," the claim is procedurally defaulted. *Id.* After carefully reviewing the record, we conclude that Jackson has not exhausted his claim because, as the district court correctly held, the claim was dismissed on state-law procedural grounds.

Subsection 99-39-21(1) of the Mississippi Code explains that, if a defendant fails "to raise objections, defenses, claims, questions, issues or errors either in fact or law which were *capable of determination at trial and/or on direct appeal*, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States," the argument is waived and is procedurally barred from review. MISS. CODE § 99-39-21(1) (emphasis added). Jackson acknowledges that he did not raise his right to be present claim on direct appeal. Jackson instead argues that the claim was raised at trial when his trial counsel, Walls, moved for a continuance after

7

No. 10-70029

Jackson asked to leave the courtroom on one occasion. Therefore, subsection 99-39-21(1) does not preclude review of his claim. We disagree.

The record indicates that Walls never mentioned a defendant's right to be present at trial or any related constitutional amendment or federal law. After Jackson voluntarily left the courtroom, Walls merely asked the court to continue the case so that Jackson could assist him with his defense. This is not equivalent to arguing that Jackson was denied his constitutional right to be present at trial. Thus, Jackson's right to be present claim was procedurally defaulted under subsection 99-39-21(1) because it was not raised at trial or on direct appeal.

Because Jackson did not exhaust his right to be present claim, we next determine whether he has presented grounds sufficient to overcome the procedural bar to our review of the claim.

**2.**

There are two exceptions to the general rule that a federal court cannot review the merits of a state prisoner's procedurally-defaulted habeas claim. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). First, a federal court can review the merits of a petitioner's claim if the prisoner can show cause for the procedural default and that he was prejudiced by the default. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). Second, a federal court can review the merits of the claim if the prisoner can show that a failure to do so would result in a fundamental miscarriage of justice. *Id.* Jackson does not contend that he can establish that there was a fundamental miscarriage of justice. Therefore, our primary inquiry is whether Jackson has shown cause and prejudice. *Id.*

In order to demonstrate cause, a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice may be demonstrated by showing that the errors "worked to [the petitioner's]

actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (internal quotation marks omitted). If the court determines that the petitioner established the requisite cause and prejudice, the court should then examine the merits of the claim for habeas relief.

Jackson argues that, to the extent that any state court procedural bar exists, Walls's ineffectiveness as Jackson's trial counsel and counsel on direct appeal is sufficient to overcome the procedural bar. Jackson argues that Walls was deficient at trial because he (1) failed to seek, or to prosecute, a competency hearing with respect to Jackson's alleged waiver of his right to be present at trial (hereinafter competency hearing claim) and (2) failed to preserve the denial of Jackson's right to be present at trial. With regard to counsel's alleged deficient performance on direct appeal, Jackson contends that Walls's failure to assign the denial of the right to be present on direct appeal is deficient performance in the absence of a strategic decision to omit the claim.

**(a) Competency Hearing Claim**

Jackson improperly raises his competency hearing claim in the context of his arguments about the procedural bar to our review of his right to be present claim. Only the right to be present claim, as it relates to Jackson's ineffective assistance of counsel claim, was certified for review. Specifically, Jackson raised the following issues during post-conviction review:

> GROUND K. Petitioner was denied his right to be present during trial and personally confront the witnesses against him and, in the alternative, whether trial and appellate counsel were ineffective in handling these issues.

> GROUND L. The trial court erred in not holding a hearing to determine whether Jackson was competent to waive his right to be present and, in the alternative, whether trial and appellate counsel were ineffective for

not raising the issue.

During federal habeas review, the district court granted a COA on the right to be present claim, but not the competency hearing claim.  Although Jackson raises the competency hearing claim in conjunction with his attempt to overcome the procedural bar to his right to be present claim, the court's review is limited to the sole issue in the COA granted by the district court.  *See Lackey v. Johnson*, 116 F.3d 149, 151–52 (5th Cir. 1997).  Therefore, our analysis focuses on Jackson's ineffective assistance arguments only so far as they relate to Jackson's right to be present claim.

### (b) Right to be Present Claim

As previously explained, a defendant can overcome a procedural default if he can show cause for the procedural default and that he was prejudiced by the default.  *See Coleman*, 501 U.S. at 749–50.  Ineffective assistance of counsel on direct appeal can constitute "cause" sufficient to overcome a procedural bar.  *See Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) (citing *Murray*, 477 U.S. at 488–89).  To prevail on this claim, a defendant must establish that (1) counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Because the Mississippi Supreme Court adjudicated Jackson's ineffective assistance of counsel claim on the merits, AEDPA mandates that we defer to the supreme court's application of *Strickland*, unless the decision: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, our ineffective assistance of counsel inquiry is not "whether counsel's

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

As previously explained, Jackson argues that his counsel was allegedly ineffective because he failed to preserve Jackson's claim that the trial court denied his right to be present at trial. Even assuming that Jackson established that Walls's performance was deficient, Jackson cannot establish that he was prejudiced because, as the record clearly indicates, each time Jackson left the courtroom he knowingly and voluntarily waived his right to be present. In other words, Jackson cannot argue that he was prejudiced by Walls's alleged inaction to protect a right that Jackson chose to waive.

Prior to any of Jackson's absences, Walls discussed with the trial court the possibility of Jackson being absent from the courtroom during certain testimony that would be "tough" for him to hear. The trial court explained that Jackson had the right to be present, but only Jackson could waive that right. Thereafter, each time Jackson chose to leave the courtroom, he either approached the bench and, outside the hearing of the jury, informed the court of his desire to leave or left of his own accord. Consistent with *Zerbst*, each time Jackson left the courtroom, he was on notice that he had the right to be present and that he could waive that right. Each time he left the courtroom Jackson advised the court that he wanted to waive his right.

Specifically, before Jackson's first absence, the trial court explained that he had the right to be present at all times, told him that he could waive that right, and asked Jackson directly if he wished to do so. Jackson responded in the affirmative. During Jackson's second and third departures, the trial court again asked Jackson directly if he wished to waive this right. Each time Jackson responded in the affirmative. The only deviation from this pattern occurred when Jackson, without approaching the bench, left the courtroom during the

reading of his taped confession.  However, by this time, Jackson was already informed of his right to be present and that he could waive that right.  Thus, he left the courtroom fully aware of his rights.

The gravamen of Jackson's argument is that he had a right to be present at trial and the trial court deprived him of that right.  However, Jackson cannot complain that Walls was deficient when he failed to protect this right because the record indicates that Jackson knowingly and voluntarily waived his right to be present.  Thus, we conclude that no reasonable argument can be made that Jackson's counsel was deficient.  Accordingly, Jackson has not established that he received ineffective assistance of counsel and has not made the requisite showing to overcome the procedural bar to our review of his right to be present claim.

**B.   Motion to Expand the COA**

This court will issue a COA when the petitioner makes "a substantial showing of the denial of a constitutional right" by demonstrating (1) "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Mitchell v. Epps*, 641 F.3d 134, 142 (5th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or (2) "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Id.*   In making the decision whether to grant a COA, this court's examination is limited to a "threshold inquiry," which consists of "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller–El v. Cockrell*, 537 U.S. 322, 327, 336 (2003).

Jackson requests an expanded COA on three issues: (1) whether he was entitled to a lesser-included offense instruction; (2) whether the state trial court denied Jackson his right to an independent, reliable, and competent mental health evaluation; and (3) whether Jackson's trial counsel was ineffective for (a) failing to develop and present mitigating evidence, and (b) failing to secure

a timely and competent mental health evaluation.  We address each of these issues in turn.

## 1.

Jackson argues that the state trial court should have allowed the jury to consider the lesser-included, non-capital offense of manslaughter, pursuant to the United States Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625, 638 (1980) (hereinafter lesser-included offense claim). We disagree. *Beck* stands for the proposition that juries in capital cases must have the opportunity to consider a lesser-included noncapital offense when the evidence would have supported such a verdict. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982).  Here, the evidence does not establish that Jackson was entitled to a lesser instruction.

Jackson was indicted and found guilty of four counts of capital murder, pursuant to section 97-3-19 of the Mississippi Code, for committing the "crime of felonious abuse and/or battery of a child in violation of subsection (2) of Section 97-5-39."  Jackson claims that the district court and state courts erred in holding that he was not entitled to an instruction on the lesser-included offenses articulated in subsection 97-3-27(2) and section 97-3-35, both homicide statutes that require a showing that the defendant acted "without malice."

Under Mississippi law, a party acts with malice if the act is done with "deliberate design." *Tran v. State*, 681 So.2d 514, 517 (Miss. 1996).  Here, there is substantial evidence that Jackson acted with malice.  Notably, on the day of the murders, Jackson cut the phone line to his mother's house before entering the house.  Jackson even inquired of his sister to make sure the phones did not work.  Jackson also asked if the children could talk before he committed the murders.  Furthermore, Jackson told his sister that he came on two previous occasions to kill them and that this time he was going to kill them all.

Thus, the district court's determination, on Jackson's lesser-included offense claim, is not debatable or wrong and does not necessitate further

discussion. *See Mitchell*, 641 F.3d at 142. Accordingly, we deny Jackson's request to expand the COA to include his lesser-included offense claim.

**2.**

Jackson claims that the state trial court's decision to appoint Dr. Michael Whelan, a psychologist, to conduct Jackson's mental health evaluation was an unreasonable application of *Ake v. Oklahoma*, 470 U.S. 68 (1985) (hereinafter *Ake* claim). Jackson explains that Whelan, who at the time was an employee of the Mississippi Department of Corrections (MDOC), treated him for depression prior to trial. Therefore, Jackson contends, Whelan had a conflict of interest and was not competent to make an independent and reliable psychological examination of Jackson. This argument is without merit.

As an initial matter, we note that Jackson's *Ake* claim is not procedurally barred. On post-conviction review, the Mississippi Supreme Court held that the claim was procedurally barred pursuant to subsection 99-39-21(2) of the Mississippi Code. Thus, the district court concluded that the claim was not exhausted. Subsection 99-39-21(2) procedurally bars the Mississippi Supreme Court from reviewing an argument in a petition for post-conviction relief that was disposed of on direct appeal. In other words, the provision has the same effect as res judicata and prevents the re-litigation of claims. The Supreme Court has explained that res judicata does not prevent federal review of a habeas claim. *See Cone v. Bell*, 129 S. Ct. 1769, 1781 (2009). Similarly, when a claim is procedurally barred pursuant to subsection 99–39–21(2), federal courts are not prevented from reviewing the merits of a claim, as long as the claim was not procedurally barred for some other reason. *See Foster v. Johnson*, 293 F.3d 766, 787 n.12 (5th Cir. 2002). Accordingly, there was no procedural bar to the district court's consideration of Jackson's *Ake* claim. Because the merits of the claim were examined by the Mississippi Supreme Court on direct appeal, the claim was examined by the state's highest court and properly exhausted. *See* 28

U.S.C. § 2254(b)(1)(A).  Therefore, we are not barred from reviewing the merits of Jackson's *Ake* claim.

Although the district court held that Jackson's *Ake* claim was procedurally barred, it ruled in the alternative that the claim was without merit.  Specifically, the district court determined that the state trial court's determination was not counter to the Supreme Court's determination in *Ake*.  We agree.  In *Ake*, the Court held that a defendant has the right to a mental health expert: (1) "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial" and (2) "in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness." 470 U.S. at 83.  Here, the trial court selected two mental health experts to evaluate Jackson, Whelan and Dr. Robert McKinley, a psychiatrist.  Thus, even if we assume that Whelan did not give Jackson an independent and reliable psychological examination as Jackson alleges, he still had the assistance of another court-appointed psychiatrist, McKinley.  Furthermore, after Jackson protested Whelan's and McKinley's evaluations, the trial court gave Jackson funds to hire Dr. Timothy Summers, a psychiatrist that Jackson selected.  Therefore, other than Whelan, Jackson received the assistance of two mental health experts, which is more than *Ake* requires.

We conclude that the district court correctly held that Jackson's claim is without merit and does not warrant a COA.

**3.**

Jackson argues that Walls was ineffective because he was allegedly dilatory in objecting to Dr. Whelan's appointment and in requesting that Jackson be evaluated by an independent, conflict-free mental health professional (hereinafter mental health evaluation claim).  Jackson further argues that, although trial counsel did present evidence of remorse and family forgiveness,

a great deal of mitigating evidence was ignored (hereinafter mitigating evidence claim).    Both arguments are not sufficient grounds for this court to grant Jackson a COA on this issue.

### (a) Mental Health Evaluation Claim

Under *Strickland*, counsel's actions are "ineffective" if the actions were so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment.  466 U.S. at 687.  Jackson's trial counsel was not dilatory, unreasonable, or otherwise ineffective for not demanding from the court an expert of Jackson's choosing, a service that Jackson was not entitled to have under federal law.  The Supreme Court explicitly stated in *Ake* that a defendant does not have "a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own."  470 U.S. at 83.  Moreover, the record indicates that counsel diligently requested that the trial court allow Jackson to select an expert.  During pre-trial and again after the parties were presented with Whelan's and McKinley's reports, Walls requested an expert of Jackson's choosing.  As previously explained, the trial court granted this request and gave Jackson funds to hire Summers, a psychiatrist he selected.  Notably, after consulting with Summers about his report, Jackson decided to withdraw his insanity defense.   In sum, Jackson's claim that Walls was dilatory in requesting an independent mental health evaluation is without merit.

### (b)  Mitigating Evidence Claim

Jackson argues that his case is factually analogous to *Williams v. Taylor*, 529 U.S. 362 (2000) because, like the defendant's counsel in *Williams*, Walls failed to present mitigating evidence during sentencing.  This argument is also unavailing.   In *Williams*, the Supreme Court found that the defendant was denied his constitutional right to effective assistance of counsel when trial counsel failed to investigate and present mitigating evidence at sentencing.  *Id.* at 390–91.   The only mitigating evidence trial counsel presented during

sentencing was the fact that the petitioner turned himself in and demonstrated remorse for his actions. *Id.* at 398. This, in conjunction with the fact that counsel failed to explore several other mitigating factors, led to the conclusion that the defendant's counsel was ineffective. *Id.* at 396–97.

*Williams* is immediately distinguishable from the circumstances in Jackson's case. First, unlike the defendant's counsel in *Williams*, Jackson's attorney presented extensive mitigating evidence during the sentencing proceedings. Witnesses testified as to Jackson's self-elected choice to turn himself into authorities, his remorse, anger disorder, potential metabolic disorders, toxic disorder, traumatic brain injuries, low IQ, and his lack of criminal or anti-social behavior prior to the murders. Second, there exists none of the additional mitigating evidence in Jackson's case that existed in *Williams*. For example, Jackson does not claim that his attorney failed to return phone calls or present evidence of his good behavior while incarcerated or that there is evidence of child abuse in his history. Therefore, the facts of the two cases do not align.

The district court's determination that Jackson's counsel did not provide ineffective assistance is not debatable or wrong. *Mitchell*, 641 F.3d at 142. Accordingly, we do not grant Jackson's request for a COA on these grounds.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief and DENY Jackson's request to expand the COA.